No. 60,440
No. 60,705

EDWARD NEAL ROBERTSON, guardian and conservator of Ida Ludwig, *et al.*, *Appellants*, v. DENNIS LUDWIG and ELVIRA FISHER, *et al.*, *Appellees*.

(765 P.2d 1124)

Opinion filed December 9, 1988.

*Elizabeth A. Carson*, of Carson & Fields, of Overland Park, argued the cause and was on the briefs for appellants.

*Larry E. Benson*, of Laurence M. Jarvis, Chartered, of Kansas City, argued the cause, and *Laurence M. Jarvis*, of the same firm, was with him on the briefs for appellees Dennis Ludwig and Elvira Fisher.

The opinion of the court was delivered by

McFARLAND, J.: These consolidated appeals arise from litigation concerning the ownership of certain joint tenancy accounts. More specifically, we are asked to determine the legal effect of the actions by one joint tenant in causing additional names to be added to the original joint tenancy accounts. Essentially, the trial court held that the addition of more persons did not destroy the nature of the joint tenancy ownership but made the accounts four-party joint tenancy ownership rather than the original two-party joint tenancy ownership. On appeal from such determination, the Court of Appeals reversed the trial court, holding that the addition of the two persons severed the original joint tenancies and thereby converted the ownership interest of the original joint tenants into that of tenancy in common, but that the added parties were joint tenants with the original joint tenant who had added their names. The matter is before us on petition for review.

The Court of Appeals opinion herein is found at 12 Kan. App. 2d 571, 752 P.2d 690 (1988). The facts underlying this litigation

and the procedural course of the litigation are lengthy and complex. The Court of Appeals' summary thereof is adequate, and, to avoid possible confusion, we adopt the same and set it forth herein (except for those portions which relate to issues not before us):

"Paul and Ida Ludwig were husband and wife for 33 years. Edward, plaintiff in this action, is Ida's son by a previous marriage. Dennis Ludwig and Elvira Fisher, defendants in this action, are Paul's children by a previous marriage.

"In August 1985, the health of both Paul and Ida began to decline. Ida was diagnosed as having senile dementia and, therefore, incapable of handling her business affairs. In October 1985, Ida was placed in a nursing home and Paul moved in with his daughter Elvira.

"Paul and Ida held their life savings in three joint tenancy accounts at Argentine Savings and Loan Association (Argentine). Two of these accounts were certificates of deposit (accounts No. 10588 and No. 845) and one was a passbook account (account No. 174). The signature cards for accounts 845 and 174 indicate Paul and Ida signed as 'owners (grantors).'

"On August 9, 1985, Paul and his son Dennis went to Argentine Savings and Loan Association and Paul instructed an employee of Argentine to add the names of Dennis and Elvira to the joint tenancy accounts. The names of Dennis Ludwig and Elvira Fisher were typed on the signature card and certificate of deposit for account 10588 and on the signature card and passbook for account 174. New cards were not made out. Dennis signed the signature cards for both accounts. Elvira signed the cards later and returned them to Argentine. The names of Dennis and Elvira were typed on the certificate of deposit for account 845. Employees of Argentine testified that a new signature card was prepared for account 845 and that Dennis and Paul signed it. Elvira testified she signed and returned the signature card to Argentine. This new signature card for account 845 could not be located and was not produced at trial. Only the original signature card bearing Paul's and Ida's signatures was produced.

"The signature cards for accounts 174 and 845 provided:

" 'SPECIFIC CONDITIONS FOR JOINT ACCOUNTS: Ownership of this savings account is vested in the names appearing on the reverse side hereof, as joint tenants with the right of survivorship and not as tenants in common. It is understood that any one of the owners who shall first act shall have power to act in all matters related to this savings account whether the other owners be living or not.'

The card for account 10588 included similar language. Paul, Ida, Dennis, and Elvira were named as the account holders on the face of the passbook and on both of the certificates of deposit. On all three accounts, their names were followed by the phrase 'as joint tenants with the right of survivorship and not as tenants in common.'

"Two days before Paul's death on May 8, 1986, Dennis withdrew two-thirds ($18,249.32) of passbook account 174, which contained $28,237.06. On May 8, 1986, Dennis and Elvira withdrew all of the proceeds of account 10588 ($22,790.02) and then divided the proceeds into three equal checks of $7,596.67. Dennis and Elvira placed one of the checks in a certificate of deposit in the

names of Ida Ludwig and Edward Robertson. On May 14, 1986, Dennis and Elvira delivered that certificate of deposit and the passbook for account 174, along with personal items belonging to Ida, to Edward. On May 23, 1986, Elvira withdrew all funds ($2,501.89) from account 845. On May 28, 1986, Edward was named guardian and conservator of his mother.

"On June 6, 1986, Edward filed a petition against . . ., Dennis, and Elvira, seeking imposition of a constructive trust on all monies derived from accounts 174, 10588, and 845, or judgment against the defendants. Edward alleged that the names of Dennis and Elvira were added without authority; that monies were withdrawn from the accounts without authority; that the monies in the accounts were largely the result of Ida's contributions; and that Paul's will superseded such illegal contracts. The court granted an ex parte restraining order impounding the funds derived from the accounts. Edward filed an amended petition, alleging the joint tenancy accounts were not entered into with the consent of all parties and that Ida was incapable of consenting to the creation of the accounts.

"Defendants filed an amended answer and counterclaim, alleging that, after Paul's death, Edward and the defendants entered into a settlement by which the funds in the joint accounts were divided. Defendants claimed Edward breached the agreement by bringing this action. . . .

"[At trial, following] the close of Edward's case, defendants moved for a directed verdict and an order setting aside all restraining orders. The court first sustained both motions as to accounts 174 and 10588. Then, after the continuance of the trial to a later date to hear additional evidence, the court also sustained both motions as to account 845. Defendants' counterclaim was dismissed.

"The district court granted defendants' motion for involuntary dismissal of Edward's claim as to accounts 174 and 10588 on two different theories. First, the court found Edward had acquiesced in the division of the accounts by accepting and not paying over to Paul's estate the one-third split. Second, the court found Ida and the defendants were joint tenants with equal ownership, and the division of the accounts fairly represented this equal ownership. As to account 845, the court found by the preponderance of the evidence that Paul intended to make Elvira a cotenant on the account with himself, Ida, and Dennis. Elvira was ordered to pay each of her [two] cotenants one-third of the account.

"The court found the addition of defendants' names to accounts 174 and 10588, along with their signatures on the signature cards for these accounts, created an enforceable contract by which defendants, Paul, and Ida became joint tenants with the right of survivorship with identical interests in the accounts. Following Paul's death, the joint tenancy continued under the terms of the contract with each party possessing the power to dispose of the funds in each account under the terms of the contract. The court found, however, that it had the power to impose a constructive trust on the funds to avoid unjust results. The division of accounts 10588 and 174 into equal shares among the joint tenants made the imposition of a constructive trust unnecessary. However, once it found the parties were cotenants as to account 845, the court imposed a constructive trust on proceeds from the account and ordered Elvira to pay equal shares to Edward and Dennis." 12 Kan. App. 2d at 572-75.

The Court of Appeals adequately summarized the general principles of law relative to joint tenancy ownership of property in Kansas, as follows:

"The distinctive characteristic of a joint tenancy is the right of survivorship. Upon the death of one of the joint tenants, the property descends to the survivor or survivors. The right of survivorship terminates only when the entire estate, without the tenants having disposed of their title or otherwise terminating the tenancy, comes into the hands of the last survivor. *Johnson v. Capitol Federal Savings & Loan Assoc.*, 215 Kan. 286, 291, 524 P.2d 1127 (1974).

"Although the presumption of joint tenancy with the right of survivorship as it existed under the common law has been abolished by statute (K.S.A. 58-501), a valid joint tenancy may be created by a contractual arrangement which confers equivalent legal rights and obligations upon the parties concerned. *In re Estate of Smith*, 199 Kan. 89, 93, 427 P.2d 443 (1967) (citing *Malone v. Sullivan*, 136 Kan. 193, 14 P.2d 647 [1932]). K.S.A. 58-501 requires that the language used in such a grant clearly indicates a joint tenancy is intended. *In re Estate of Smith*, 199 Kan. at 93.

"K.S.A. 58-501 provides in pertinent part:

" 'Real or personal property granted or devised to two or more persons including a grant or devise to a husband and wife shall create in them a tenancy in common with respect to such property unless the language used in such grant or devise makes it clear that a joint tenancy was intended to be created . . . . Where joint tenancy is intended as above provided it may be created by:

" '(a) Transfer to persons as joint tenants from an owner or a joint owner to himself or herself and one or more persons as joint tenants.'

"In determining whether a joint tenancy account is created, general contract principles are applied. *In re Estate of Powell*, 222 Kan. 688, 690-91, 567 P.2d 872 (1977); *Eastman, Administrator v. Mendrick*, 218 Kan. 78, 82, 542 P.2d 347 (1975); *Smith*, 199 Kan. 89, Syl. ¶ 1. A joint tenancy account is created when the depositor signs a signature card naming himself and another 'as joint tenants with right of survivorship and not as tenants in common.' *Johnson*, 215 Kan. at 290 (quoting *Edwards v. Ledford*, 201 Kan. 518, 524, 441 P.2d 834 [1968]). These 'magic words' meet the clarity requirement of K.S.A. 58-501 and create an enforceable written contract. *Johnson*, 215 Kan. at 290; *Edwards*, 201 Kan. at 524. The provisions of the signature card constitute a contract in writing between the depositor and the bank, enforceable according to its terms, and a parol understanding at variance with such terms is inadmissible in the absence of fraud or mutual mistake. *Powell*, 222 Kan. at 690-91; *Eastman*, 218 Kan. at 82; *Johnson*, 215 Kan. at 290; *Edwards*, 201 Kan. at 524-25.

"Under common law, 'four unities' had to be present to create a joint tenancy: (1) interest—the tenants must have one and the same interest; (2) title—the interests must accrue by one and the same instrument or conveyance; (3) time—the interests must commence at one and the same time; and (4) possession—the property must be held by one and the same undivided possession. If any one of these unities is lacking, the estate is not one in joint tenancy. *Simonich, Executrix v. Wilt*, 197 Kan. 417, 421, 417 P.2d 139 (1966). Joint tenancy bank accounts created by contract have been held to satisfy the requirements of the 'four unities.' *Edwards*, 201 Kan. at 526; *Simonich*, 197 Kan. at 424." 12 Kan. App. 2d at 575-77.

There is no claim herein that the creation of all three accounts did not establish valid joint tenancy ownership in Paul and Ida. The issue before us is whether or not Paul could unilaterally extend the joint tenancy accounts to four-party rather than two-party ownership. Put another way, was Ida's consent necessary to add additional names to the accounts? Edward argues that the addition of the names was a nullity, and that Ida, as sole survivor, is entitled to all the proceeds in the accounts. Alternatively, Edward argues that the addition of the names severed the joint tenancy and rendered the ownership to be as tenants in common between Paul and Ida. Therefore, Paul's one-half interests in the accounts would be assets of his estate.

The district court held that the addition of the names created valid four-party joint ownership in the accounts. The district court further held that it was Paul's intention that Ida, Dennis, and Elvira should each receive one-third of the proceeds. Inasmuch as this division had already occurred as to accounts Nos. 174 and 10588, no court order was needed to accomplish it. The district court imposed a constructive trust upon the proceeds of account No. 845 and directed the same be awarded one-third each to Ida, Dennis, and Elvira. As an additional basis for its determination, the district court held that Edward had acquiesced in the division of accounts Nos. 174 and 10588 by accepting one-third of each of the two accounts.

The Court of Appeals held: (1) no acquiescence had occurred; (2) the addition of the two names severed the joint tenancy; (3) Ida was entitled to one-half of each account as a tenant in common; and (4) the addition of the two names created a valid joint tenancy among Paul, Dennis, and Elvira in Paul's one-half interest in each of the accounts. So, under the Court of Appeals opinion, one-half of the proceeds is awarded to Ida, with Dennis and Elvira each receiving one-fourth.

We believe the resolution of this issue lies in the language of the instruments creating the original joint tenancy accounts. Paul and Ida signed the signature cards. The signature cards for accounts Nos. 174 and 845 provide:

"SPECIFIC CONDITIONS FOR JOINT ACCOUNTS: Ownership of this savings account is vested in the names appearing on the reverse side hereof, as joint tenants with the right of survivorship and not as tenants in common. It is understood that *any one of the owners who shall first act shall have power to act*

*in all matters related to this savings account whether the other owners be living or not."* (Emphasis supplied.)

The card for account No. 10588 included similar language.

By executing these instruments, Ida granted to Paul virtually unlimited authority over the accounts and their proceeds. During his lifetime, he could have withdrawn the proceeds, given them to Dennis and Elvira, created new joint tenancy accounts with just himself and Dennis and Elvira, or otherwise disposed of the proceeds. Cloaking Paul with the *"power to act in all matters related to this savings account"* must be held to include the power to add additional names to the accounts. Clearly, Paul had authority to enlarge the joint tenancy ownership as he did. Therefore, valid four-party joint ownership of the accounts was created.

The district court further held that it was Paul's intention that each of the three surviving joint tenants should recover one-third of the proceeds. It is the position of Dennis and Elvira that, while they were under no legal obligation to share the proceeds equally with Ida, they did so "to honor their deceased father's wishes and directions." Neither Dennis nor Elvira makes claim to more than one-third of each account and each asks only that the district court's division of the proceeds be affirmed. Therefore, there is no claim before this court that either Dennis or Elvira should be awarded more than one-third of the proceeds of the accounts.

We agree with the Court of Appeals that the district court improperly held that Edward has acquiesced in the three-way split of accounts Nos. 174 and 10588. The rationale in the Court of Appeals opinion adequately explains its rejection of this ground, and our resolution of the central issue renders this question extraneous. A number of procedural and evidentiary issues were presented to the Court of Appeals. Review of its disposition of these issues was not sought. After examining the same, we are satisfied they were properly determined and the result we have reached does not require their inclusion herein.

The judgment of the Court of Appeals is reversed. The judgment of the district court is affirmed.

SIX, J., not participating.