(154 P.3d 1136)
No. 95,792

JARED M. WILSON, *Appellee,* v. MICHAEL L. WILSON, *Appellant.*

No. 95,793
JOSHUA A. WILSON, *Appellee,* v. MICHAEL L. WILSON, *Appellant.*

No. 95,794
SARENA L. WILSON, *Appellee,* v. MICHAEL L. WILSON, *Appellant.*

Opinion filed April 6, 2007.

*Brian S. Carroll*, of Carroll Law Office, P.A., of Marysville, for appellant.

*Kent E. Oleen*, of Manhattan, for appellee.

Before RULON, C.J., MALONE and HILL, JJ.

MALONE, J.: Michael L. Wilson and his wife, Penny Wilson, established two investment accounts for each of their three children pursuant to the Kansas Uniform Transfer to Minors Act (UTMA). They also opened a certificate of deposit (CD) for each of the three children. Michael and Penny subsequently divorced and, shortly thereafter, Michael withdrew all the funds in two of the children's UTMA accounts and two of the children's CDs. The three children, after reaching the age of majority, sued Michael for violating his duties under the UTMA regarding the investment accounts and for breaching his fiduciary duty regarding the CDs. After a 2-day bench trial, the district court ordered Michael to repay the UTMA accounts and CDs with interest, and the district court further ordered Michael to pay punitive damages. Michael appeals the district court's verdict and award of punitive damages.

## Factual and procedural background

Michael and Penny married on November 12, 1976. They had three children: Sarena L. Wilson, born August 19, 1978, Jared M. Wilson, born June 18, 1980, and Joshua A. Wilson, born January 15, 1982. On March 2, 1995, Michael and Penny established two irrevocable accounts with Edward Jones for each of their three children, for a total of six accounts pursuant to the Kansas UTMA. Michael was designated as custodian on each account.

On March 26, 1996, Michael and Penny opened a $5,000 CD in the names of Jared Michael Wilson and/or Mike or Penny Wilson, a $4,000 CD in the names of Joshua A. Wilson and/or Mike or Penny Wilson as joint tenants and not as tenants in common, and a $2,000 CD in the names of Sarena L. Wilson and/or Mike or Penny Wilson as joint tenants and not as tenants in common. Michael testified that the CDs were opened to "benefit the kids later on."

On May 21, 1998, Penny filed for divorce from Michael. Neither Michael nor Penny claimed any interest in the children's accounts during the divorce proceedings, nor did they address the children's accounts in their property settlement agreement. Michael never indicated in the divorce proceedings that the children were indebted to him. The divorce became final on September 7, 1999.

On September 24, 1999, Michael contacted Kate Manley of Edward Jones and requested that Sarena's UTMA accounts be transferred to him. Manley informed Michael that because Sarena had reached the age of 21, the accounts could not be transferred without Sarena's approval. In November 1999, Sarena received a letter from Manley advising her that the accounts were hers to control now that she was 21, and Sarena placed the accounts into her name only. On November 23, 1999, Michael told Sarena to transfer the money back because the accounts belonged to him. Sarena refused to do so.

On January 4, 2000, Michael redeemed both of Jared's and Joshua's UTMA accounts. Michael did not inform his sons he had closed the accounts.

On March 9, 2000, Michael brought Sarena's CD to the bank for withdrawal. The CD was later determined to contain a forgery of Sarena's signature. A Kansas Bureau of Investigation agent could not identify Michael as the person who signed Sarena's name, but he did indicate that the endorsement was not Sarena's. Michael had no explanation for how the CD came to have Sarena's forged signature.

On June 2, 2000, Michael asked Joshua to sign his CD over to him. Joshua complied, and Michael cashed the CD for his own use. Joshua testified that he only endorsed the CD because Michael

told him he was transferring the CD to another institution that paid a higher interest rate.

In July 2000, Jared and Joshua learned that Michael had redeemed their UTMA accounts. In July 2001, Sarena learned that her CD was gone. Thereafter, the three children sued Michael for conversion of the funds. The petitions requested an accounting from Michael of all funds transferred from the UTMA accounts and from the CDs. The petitions were subsequently amended to include claims for punitive damages.

The district court held a 2-day bench trial. At the trial, Michael claimed that he reimbursed himself with the proceeds of Jared's and Joshua's UTMA accounts for expenses he had incurred on their behalf. Michael presented exhibits, including numerous invoices and canceled checks, representing expenditures he had made for Jared and Joshua from 1995 through 2000. The expenditures covered a wide variety of items, including payments for clothing, medical bills, car insurance, and car repairs. The total expenditures exceeded the amounts Michael had withdrawn from the UTMA accounts. Michael also testified that he had not received any explanation as to how to manage the UTMA accounts and what types of withdrawals were permissible. Manley directly contradicted Michael's testimony by testifying that she had informed Michael of the rules governing the UTMA accounts. As for the CDs, Michael testified he was entitled to cash the CDs because they were joint tenancy accounts.

The district court issued a memorandum decision containing detailed findings of fact and conclusions of law. The district court concluded that Michael had breached his fiduciary duty to his children and had converted the funds for his own use. The district court ordered Michael to return to Jared and Joshua the amounts taken from their UTMA accounts and to return to Joshua and Sarena the total value of their CDs, plus interest. The district court granted judgment in favor of Jared for $8,846.56, judgment in favor of Joshua for $14,477.18, and judgment in favor of Sarena for $3,044.55. The district court further found that Michael had acted willfully and that punitive damages were appropriate. At a subsequent hearing, the district court awarded $4,500 in punitive dam-

ages to Jared, $7,000 in punitive damages to Joshua, and $2,000 in punitive damages to Sarena. Michael timely appeals.

### UTMA accounts

Michael claims the district court erred in granting judgment against him for reimbursement of the UTMA accounts. Michael maintains K.S.A. 38-1715(a) permits the custodian of a UTMA account to dispose of the custodial property as the custodian deems advisable so long as the custodian acts for the benefit of the minor. Michael asserts that a parent custodian under the UTMA can be reimbursed from custodial property for expenses the parent paid for the minor's benefit, even if the expenses are for necessities a parent is generally obligated to provide for his or her children.

The interpretation of a statute is a question of law over which an appellate court has unlimited review. An appellate court is not bound by the district court's interpretation of a statute. *Foster v. Kansas Dept. of Revenue*, 281 Kan. 368, 374, 130 P.3d 560 (2006).

"The fundamental rule of statutory construction is to ascertain the legislature's intent. The legislature is presumed to have expressed its intent through the language of the statutory scheme. Ordinary words are given their ordinary meanings. A statute should not be read to add language that is not found in it or to exclude language that is found in it. When a statute is plain and unambiguous, the court must give effect to the legislature's intent as expressed rather than determining what the law should or should not be. [Citation omitted.]" *State v. Bryan*, 281 Kan. 157, 159, 130 P.3d 85 (2006).

"In construing statutes and determining legislative intent, several provisions of an act or acts, *in pari materia*, must be construed together with a view of reconciling and bringing them into workable harmony if possible. Effect must be given, if possible, to the entire act and every part thereof. To this end, it is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible. The court must give effect to the legislature's intent even though words, phrases, or clauses at some place in the statute must be omitted or inserted." *State ex rel. Morrison v. Oshman Sporting Goods Co. Kansas*, 275 Kan. 763, Syl. ¶ 2, 69 P.3d 1087 (2003).

The Kansas UTMA was enacted in 1985. The purpose of the Act is to provide an inexpensive, easy mechanism for transferring property to minors. Any transfer under the UTMA is irrevocable and the custodial property is vested in the minor, but the custodian has

rights, powers, duties, and authority over the property as provided in the Act. The custodian relinquishes authority and all custodial property is transferred to the minor when he or she reaches 21 years of age. Pertinent provisions of the Kansas UTMA are as follows:

"A transfer made pursuant to K.S.A. 38-1710 is irrevocable, and the custodial property is indefeasibly vested in the minor, but the custodian has all the rights, powers, duties, and authority provided in this act, and neither the minor nor the minor's legal representative has any right, power, duty, or authority with respect to the custodial property except as provided in this act." K.S.A. 38-1712(b).

"In dealing with custodial property, a custodian shall observe the standard of care that would be observed by a prudent person dealing with property of another and is not limited by any other statute restricting investments by fiduciaries. If a custodian has a special skill or expertise or is named custodian on the basis of representations of a special skill or expertise, the custodian shall use that skill or expertise. However, a custodian, in the custodian's discretion and without liability to the minor or the minor's estate, may retain any custodial property received from a transferor.

. . . .

"A custodian shall keep records of all transactions with respect to custodial property, including information necessary for the preparation of the minor's tax returns, and shall make them available for inspection at reasonable intervals by a parent or legal representative of the minor or by the minor if the minor has attained the age of 14 years." K.S.A. 38-1713(b) and (e).

"A custodian acting in a custodial capacity, has all the rights, powers, and authority over custodial property that unmarried adult owners have over their own property, but a custodian may exercise those rights, powers, and authority in that capacity only." K.S.A. 38-1714(a).

"A custodian may deliver or pay to the minor or expend for the minor's benefit so much of the custodial property as the custodian considers advisable for the use and benefit of the minor, without court order and without regard to (i) the duty or ability of the custodian personally or of any other person to support the minor, or (ii) any other income or property of the minor which may be applicable or available for that purpose.

. . . .

"A delivery, payment, or expenditure under this section is in addition to, not in substitution for, and does not affect any obligation of a person to support the minor." K.S.A. 38-1715(a) and (c).

"The custodian shall transfer in an appropriate manner the custodial property to the minor or to the minor's estate upon the earlier of:

(1) The minor's attainment of 21 years of age with respect to custodial property transferred under K.S.A. 38-1705 or 38-1706;

. . . .

(3) the minor's death." K.S.A. 38-1721(1) and (3).

The primary issue in this case is whether a parent custodian under the UTMA can be reimbursed from custodial property for expenses the parent paid for the minor's benefit, even if the expenses are for necessities a parent is generally obligated to provide for his or her child. Michael asserts K.S.A. 38-1715(a) specifically authorizes a custodian to use custodial property to pay expenses for the minor's benefit without regard to "the duty or ability of the custodian personally or of any other person to support the minor." Jared and Joshua respond to Michael's argument by noting that K.S.A. 38-1715(c) provides that any payment by a custodian under the UTMA "does not affect any obligation of a person to support the minor."

Here, the district court heard conflicting evidence concerning the intentions of the parties, and the district court found that Michael's actions were not justified by K.S.A. 38-1715(a) for the following specific reasons:

"(a) At no time from the date of the establishment of these accounts until their redemption was anyone aware that these accounts would be used to reimburse the defendant parent for expenses incurred on behalf of his minor children.

"(b) There was no contemporaneous entries or journal presented to the Court which substantiated the plan that expenses expended by the parent defendant would be reimbursed by the children's funds [as required by K.S.A. 38-1713(e)].

"(c) At no time during the divorce proceeding did the defendant list or claim any ownership interest in these accounts as part of the settlement agreement.

"(d) At no time during the divorce proceeding did the defendant indicate that, as an asset to be considered in the divorce proceeding, he was owed money from the children for expenses expended by him on their behalf.

"(e) The defendant indicated to Sarena that her account was 'his money' not hers; that the defendant failed to indicate at that time, as well as at the time of the redemption of the accounts on January 4, 2000, that he was expending these custodial accounts to him for reason that he had personally expended funds for the children and that he expected repayment."

The district court further stated that the "liquidation of these accounts was in such close proximity to the divorce and settlement that the Court is of the opinion that the defendant's actions were

taken in measure as a retaliation against his former wife and his children" and that "the defendant intentionally sought to convert these funds to himself and [Michael's record of expenses] on behalf of the minor children was, in fact, [a] rationalization determined after the fact of the conversion."

Based upon the district court's factual findings, the district court concluded as a matter of law:

"The Court is of the opinion that what is contemplated by K.S.A. 38-1715 is the custodian of the account may deliver or pay directly to the minor, if the custodian considers it advisable for the use or benefit of the minor, or that the custodian may expend for the minor's benefit so much of the custodial property as the custodian considers advisable. The Court does not feel that the intent of the statute is that a parent, who also serves as custodian of a minor child's property, can expend routine expenditures associated with the child's expense over the course or a period of time and then in one lump sum take it upon himself to terminate the account and expend the entire proceeds of the funds for expenses associated with the child."

When a district court issues findings of fact and conclusions of law, the function of an appellate court is to determine whether the district court's findings of fact are supported by substantial competent evidence and whether the findings are sufficient to support the district court's conclusions of law. Substantial evidence is such legal and relevant evidence as a reasonable person might accept as sufficient to support a conclusion. *U.S.D. No. 233 v. Kansas Ass'n of American Educators*, 275 Kan. 313, 318, 64 P.3d 372 (2003). An appellate court does not weigh conflicting evidence, pass on credibility of witnesses, or redetermine questions of fact. *State ex rel. Morrison*, 275 Kan. at 775. An appellate court's review of conclusions of law is unlimited. *Nicholas v. Nicholas*, 277 Kan. 171, 177, 83 P.3d 214 (2004).

Here, the record supports the district court's findings of fact. At no time was anyone aware that the UTMA accounts would be used to reimburse Michael for expenses incurred on behalf of his minor children. Neither Michael nor Penny claimed any interest in the UTMA accounts during the divorce proceedings, nor did they address the children's accounts in their property settlement agree-

ment. Michael never indicated in the divorce proceedings that the children were indebted to him.

More significantly, Michael failed to maintain contemporaneous records of the expenses he paid for Jared and Joshua. Instead, he waited until after he redeemed the UTMA accounts to gather invoices and canceled checks representing expenses he had paid for his sons over the years. The district court considered the proximity of Michael's actions to the divorce settlement and found that Michael's actions were in retaliation against his former wife and his children. The district court also found that Michael's records of expenses were an after-the-fact attempt to justify Michael's conversion of funds from the UTMA accounts.

The district court acknowledged that K.S.A. 38-1715(a) provides that a custodian may pay funds directly to the minor or expend funds directly for the minor's benefit, so long as the custodian considers the payments advisable for the use and benefit of the minor. However, the district court concluded as a matter of law that the statute does not authorize a parent custodian to take a lump sum reimbursement from custodial property for routine expenses the parent paid for the minor's benefit over the course of many years.

There are no Kansas appellate decisions addressing whether a parent custodian under the UTMA can use custodial property to pay expenses for the minor's benefit when the expenses are for necessities a parent is generally obligated to provide for his or her child. However, cases from other jurisdictions hold that custodial funds may not be used by a parent in a divorce action to pay child support, and that such action by a parent constitutes a breach of fiduciary duty. See *Mangiante v. Niemiec*, 843 A.2d 656, 660 (Conn. App. 2004); *Sutliff v. Sutliff*, 528 A.2d 1318, 1325 (Pa. 1987); *Shinkoskey v. Shinkoskey*, 19 P.3d 1005, 1009-10 (Utah 2001).

Despite these cases from other jurisdictions concerning child support obligations, we conclude there are no provisions in the Kansas UTMA prohibiting a parent custodian from using custodial property to pay expenses for the minor's benefit, even when the expenses are for necessities a parent is generally obligated to pro-

vide for his or her child. In fact, such expenditures are expressly authorized under K.S.A. 38-1714(a) and K.S.A. 38-1715(a). However, in paying such expenses, the parent custodian must comply with the provisions of the UTMA. The UTMA places at least two explicit restrictions on the custodian's ability to dispose of custodial property. First, the custodian must exercise "the standard of care that would be observed by a prudent person dealing with property of another." K.S.A. 38-1713(b). Second, the custodian must expend the funds for the use and benefit of the minor. K.S.A. 38-1715(a).

Furthermore, the parent custodian may pay funds directly to the minor or directly for the minor's benefit, and the parent custodian should keep contemporaneous records of all transactions with respect to the custodial property. When a district court finds, as in the present case, that a parent custodian has taken a lump sum reimbursement from custodial property in what amounts as a conversion of the funds, then the custodian is in violation of K.S.A. 38-1715(a) and is responsible for reimbursement.

In summary, the evidence in this case supports the district court's conclusion that Michael did not expend the custodial property for the benefit of the children. The evidence, including Michael's own statements, his covert withdrawal of the funds, the timing of Michael's withdrawals, and the testimony of the Edward Jones representative, indicates that Michael converted the funds for his own use. The district court did not find persuasive Michael's later rationalization that he was entitled to the custodial property as reimbursement for expenses he had paid over the years. As previously stated, this court does not weigh conflicting evidence, pass on credibility of witnesses, or redetermine questions of fact. *State ex rel. Morrison*, 275 Kan. at 775. We conclude the district court did not err in granting judgment against Michael for reimbursement of the UTMA accounts.

### Joint tenancy certificates of deposit

Next, Michael claims the district court erred in requiring him to reimburse Joshua and Sarena for the joint tenancy CDs that Michael cashed for his own use. Michael asserts that he did not owe Joshua or Sarena a duty of care as a fiduciary regarding their CDs.

Because the CDs were held as joint tenancy accounts, Michael claims he could cash the CDs at will.

Joshua and Sarena contend that the CDs did not satisfy the requirements of a joint tenancy because two endorsements were required for a withdrawal, not one. Sarena's CD required her signature and either Michael's or Penny's, and Joshua's CD, likewise, required his signature and either Michael's or Penny's. Thus, they did not each have unlimited authority over the accounts as each would have had in a joint tenancy.

The district court found that the clear intent of the parties was that the CDs were the assets of the children and that the joint tenancy designation was a mere accommodation. The district court also found that Michael owed Joshua and Sarena a fiduciary duty regarding the CDs, which Michael violated when he converted the CDs for his own use and benefit.

" 'In determining whether a joint tenancy account is created, general contract principles are applied. [Citation omitted.] A joint tenancy account is created when the depositor signs a signature card naming himself and another "as joint tenants with right of survivorship and not as tenants in common." [Citation omitted.] These "magic words" meet the clarity requirement of K.S.A. 58-501 and create an enforceable written contract. [Citation omitted.] The provisions of the signature card constitute a contract in writing between the depositor and the bank, enforceable according to its terms, and a parol understanding at variance with such terms is inadmissible in the absence of fraud or mutual mistake. [Citations omitted.]' [Citation omitted.]" *Robertson v. Ludwig*, 244 Kan. 16, 19, 765 P.2d 1124 (1988).

Joint tenancy bank accounts created by contract have been held to satisfy the requirements of the four unities of joint tenancy: interest, time, title, and possession. 244 Kan. at 19. Although both contract law and the joint tenancy statute, K.S.A. 58-501, rely on the intent of the parties, under Kansas case law, a bank signature card designating that an account is held as a "joint tenancy and not tenancy in common" demonstrates the parties' intent to hold the account as joint tenants and prohibits the introduction of parol evidence to prove otherwise. *Agrelius v. Mohesky*, 208 Kan. 790, Syl. ¶¶ 3, 4, 5, 494 P.2d 1095 (1972); see K.S.A. 58-501.

Joshua and Sarena's argument that the CDs did not satisfy the requirements of a joint tenancy fails under the prevailing case law

in Kansas that the bank's signature card designation satisfies K.S.A. 58-501. Although the district court cited evidence tending to demonstrate that the joint tenancy designation was a mere accommodation, such evidence was inadmissible parol evidence in the absence of fraud or mutual mistake. There was no mutual mistake here because both Sarena and Joshua admitted that they understood that a joint tenancy meant that any one of the people named on the signature card could withdraw all of the money in the account. Likewise, there was no evidence of mutual mistake between the depositors and the bank.

There was, however, evidence of fraud. Sarena's signature on her CD was forged. Also, Joshua testified that he only endorsed his CD over to Michael because Michael indicated he was transferring the CD to another institution to earn a higher interest rate. Based upon this evidence of fraud, parol evidence was admissible to establish a contrary intent of the parties regarding ownership and control of the CDs.

The district court determined that Michael owed Joshua and Sarena a fiduciary duty regarding the CDs. Whether parties have a fiduciary relationship is an evidentiary question which must be determined from the facts in each case. Therefore, the appellate court must ascertain whether there is substantial competent evidence to support the finding of the district court viewing the evidence in the light most favorable to the party who prevailed in the court below. *Olson v. Harshman*, 233 Kan. 1055, 1057, 668 P.2d 147 (1983).

There are two types of fiduciary relationships: "(1) those specifically created by contract such as principal and agent . . . and (2) those implied in law due to the factual situation surrounding the involved transactions and the relationship of the parties to each other and to the questioned transactions." *Denison State Bank v. Madeira*, 230 Kan. 684, 691, 640 P.2d 1235, *modified on rehearing* 230 Kan. 815, 640 P.2d 1235 (1982). However, the mere relationship of parent and child does not raise a presumption of a confidential and fiduciary relationship. *Olson*, 233 Kan. at 1059.

The Kansas Supreme Court elaborated on the characteristics of a fiduciary relationship:

"A fiduciary relationship imparts a position of *peculiar confidence placed by one individual in another*. A fiduciary is a person with a duty to act *primarily for the benefit of another*. A fiduciary is in a position to have and exercise, and does *have and exercise influence over another*. A fiduciary relationship implies a condition of *superiority of one of the parties over the other*. Generally, in a fiduciary relationship, the property, interest or authority of the other is *placed in the charge of the fiduciary*. [Citation omitted.]" 230 Kan. at 692.

Given the facts of this case, the evidence supports the district court's conclusion that Michael had a fiduciary relationship with Joshua and Sarena regarding their CDs. Michael and Penny treated the CDs as the sole property of Joshua and Sarena and neither claimed the CDs in their divorce proceedings. Michael testified that he and Penny placed the money into the CDs for the benefit of the children. As their father and one of the accommodation parties on the CDs, along with Penny, Michael had a duty to act for the benefit of Joshua and Sarena. Michael clearly violated his fiduciary duty when he cashed the CDs for his own use and benefit.

In summary, even though the CDs were designated by the bank signature cards as joint tenancy accounts, the district court was allowed to consider parol evidence concerning the intent of the parties as to ownership and control of the funds. The district court's conclusion that Michael violated a fiduciary duty with his children concerning the CDs was supported by substantial competent evidence. Accordingly, the district court did not err in granting judgment in favor of Joshua and Sarena regarding the CDs.

### Punitive damages

Michael also claims the district court erred in awarding punitive damages. First, Michael argues that his conduct was not willful because he was never given detailed instructions regarding the UTMA accounts from Edward Jones. Second, Michael maintains that the district court failed to make specific findings that he violated the factors set forth in K.S.A. 60-3702 for determining the appropriate amount of punitive damages to award.

An award of punitive damages is governed by K.S.A. 60-3702 and K.S.A. 60-3703. The interpretation of a statute is a question of law over which an appellate court has unlimited review. *Foster*,

281 Kan. at 374. Subject to the statutory provisions, an appellate court reviews a district court's award of punitive damages for an abuse of discretion. *Mynatt v. Collis*, 274 Kan. 850, 883, 57 P.3d 513 (2002).

To warrant an award of punitive damages, one party must prove by clear and convincing evidence that the other party against whom damages are sought acted with willful or wanton conduct, fraud, or malice. K.S.A. 60-3702(c). Here, the district court found that Michael had acted willfully and had displayed a "reckless indifference" to the rights of his children. Michael's testimony that he was never given detailed instructions regarding the UTMA accounts was contradicted by Manley, the Edward Jones representative. The district court found Manley's testimony more credible. As previously stated, this court does not weigh conflicting evidence, pass on credibility of witnesses, or redetermine questions of fact. *State ex rel. Morrison*, 275 Kan. at 775. The district court did not err in finding that punitive damages were warranted.

As to the amount of the damages, K.S.A. 60-3702(b) sets forth seven factors the district court may consider in awarding punitive damages:

"(1) The likelihood at the time of the alleged misconduct that serious harm would arise from the defendant's misconduct;

"(2) the degree of the defendant's awareness of that likelihood;

"(3) the profitability of the defendant's misconduct;

"(4) the duration of the misconduct and any intentional concealment of it;

"(5) the attitude and conduct of the defendant upon discovery of the misconduct;

"(6) the financial condition of the defendant; and

"(7) the total deterrent effect of other damages and punishment imposed upon the defendant as a result of the misconduct, including, but not limited to, compensatory, exemplary and punitive damage awards to persons in situation similar to those of the claimant and the severity of the criminal penalties to which the defendant has been or may be subjected."

The district court need not make an explicit statement of all the relevant facts in its consideration of the factors so long as the record indicates that the court considered the statutory factors when making its determination regarding punitive damages. *Mynatt*, 274 Kan. at 884.

Here, the record indicates that in its ruling from the bench on punitive damages, the district court specifically referred to the statutory factors at K.S.A. 60-3702(b). Even though the district court did not make an explicit statement as to all the statutory factors, the record reflects that the district court was aware of the statutory factors and discussed the factors in general before determining the amount of punitive damages to award. We conclude the district court did not abuse its discretion in the amount of punitive damages it awarded to each of the three children.

### Attorney fees

Finally, the appellees, Joshua, Jared, and Sarena filed a motion with this court seeking attorney fees for services on appeal. Supreme Court Rule 7.07(b) (2006 Kan. Ct. R. Annot. 57) grants an appellate court authority to award attorney fees for services on appeal in cases in which the district court had authority to award attorney fees. Generally, the district court is not authorized to award attorney fees in the absence of a statute or express provision in a contract. *Hawkinson v. Bennett,* 265 Kan. 564, 575, 962 P.2d 445 (1998). Here, the district court did not have authority to award attorney fees. Furthermore, the appellees do not allege that Michael's appeal was frivolous. Thus, the appellees' request for attorney fees on appeal is denied.

Affirmed.