NOT DESIGNATED FOR PUBLICATION

No. 113,153

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CAROL T. BELT,
As the Guardian and Conservator of Morley E. Fackler,
*Appellant*,

v.

JENNIE O. POON,
*Appellee*.


MEMORANDUM OPINION


Appeal from Sedgwick District Court; WARREN WILBERT, judge. Opinion filed June 17, 2016.
Affirmed.


*Terry L. Malone* and *Teresa L. Adams*, of Martin, Pringle, Oliver, Wallace & Bauer, L.L.P., of
Wichita, for appellant.


*Derek S. Casey*, of Triplett, Woolf & Garretson LLC, of Wichita, for appellee.


Before GARDNER, P.J., LEBEN, J., and HEBERT, S.J.


*Per Curiam*: In 2013, Jenny O. Poon received some $247,000 from Morely
Fackler, her boyfriend of more than 14 years. In early 2014, Fackler's daughter, Carol
Belt, was appointed as his guardian and conservator and filed suit seeking to recover the
money from Poon. Belt alleged Fackler lacked capacity to have made the gifts to Poon
and Poon had exercised undue influence over Fackler. After a 4-day bench trial, the
district court ruled against Belt.

On appeal, Belt argues that the district court erred by excluding parol evidence regarding creation of a joint tenancy account; the district court erroneously based its decision regarding Fackler's capacity on lay testimony rather than medical testimony; and the district court erroneously imposed the burden of proof regarding Belt's undue influence claims.

We find no reversible error and affirm the judgment of the district court.

*Factual and Procedural Background*

In July 2013, Fackler, age 84, and Poon, age 78, had been in an exclusive, romantic relationship for approximately 14 years. They had always maintained separate homes and finances, although over the course of their relationship Fackler had assisted Poon by replacing her driveway, buying her a new stove, and had given her clothes and a diamond ring. Fackler also shared with Poon details of his substantial assets, which he valued at more than $2 million, and which he had placed in trust for estate planning purposes. Carol Belt is Fackler's only child and his sole heir.

On June 15, 2013, Fackler picked up Poon and took her to Meritrust Credit Union in Wichita, where he deposited $150,000 into a money market account set up in the names of Fackler and Poon as joint tenants with rights of survivorship (the Meritrust Account). The Meritrust Account was funded in part by a check in the amount of $131,732.61 from life insurance proceeds, and the balance from a personal check in the amount of $18,267.39, which was calculated and written out by Fackler.

On September 9, 2013, Fackler deposited an additional $250,000 into the Meritrust account. Fackler received the account statements from Meritrust, and Poon was unaware of this deposit.

In the late summer of 2013, Fackler, who had always been strong and active, lost his appetite and began losing weight. By September, Poon became so concerned about Fackler's health that she contacted Belt, who lived in California, for help in getting him medical attention. Belt eventually came to Wichita and helped Poon admit Fackler to the hospital on October 16, 2013.

Later that day, Poon went to Meritrust planning to withdraw the $150,000 and close the account, but when she learned that the account now contained over $400,000, she withdrew only $150,474, leaving the additional $250,000 in the Meritrust Account.

While Fackler was still in the hospital, Belt arranged for him to execute a durable power of attorney, ostensibly for the purpose of paying his bills. Belt used the power of attorney to withdraw the funds remaining in the Meritrust Account and placed them in a separate account established in her and Fackler's names.

After 2 weeks in the hospital and 1 month in rehabilitation, Fackler's health slowly improved and, in early December 2013, he returned to his home where Belt was now staying. He continued to have daily contact with Poon. When Poon told him that Belt used the power of attorney to transfer funds out of the Meritrust Account, he became upset and had Poon take him to the bank where, despite the advice of bank officials, he revoked Belt's power of attorney.

On December 23, 2013, Fackler called Poon and asked her to take him to Bank of America where he normally banked. Fackler deposited a $350,000 check which he received from cashing in some stock. Fackler then indicated he wanted Poon to have one-third of the funds, but since bank policy precluded release of funds for 24 hours after deposit, the transfer could not be completed at that time. Fackler and Poon returned to the bank on the following day and, after discussions with Sharon Coupland, a bank associate whom Fackler had regularly interacted with the previous 5 years, Fackler showed her his

3

calculations regarding one-third of the deposit and rounded the amount up to $117,000. Coupland issued a cashier's check in that amount which Fackler then handed to Poon. Poon deposited the check in her personal account and then spent the next 2 weeks of her vacation from work with Fackler.

In January 2014, Belt filed a guardian and conservatorship action, and obtained temporary orders which prevented contact between Poon and Fackler. On February 7, 2014, Belt, in her capacity as guardian and conservator, filed this lawsuit against Poon seeking to recover the money which Poon had received from the Meritrust Account and from the Bank of America cashier's check (the Cashier's Check").

The case eventually proceeded to a bench trial in September 2014. The district court first heard Poon's evidence and found that she had met the burden of establishing a prima facie case that the transfers were valid. The court then heard Belt's evidence in support of her contentions that neither gift was valid due to Fackler's diminished mental capacity and Poon's undue influence. Belt proffered testimony regarding Fackler's frugality and prior discussions with his financial advisor. Belt sought to establish that Fackler and Poon had not intended to establish a true joint tenancy with its attendant legal ramifications, but rather had intended the Meritrust Account to be for their mutual convenience in order to take care of each other's health care needs. Belt contended that both Fackler and Poon were to have contributed $150,000 to the Meritrust Account, but Poon reneged on that agreement.

In November 2013, Belt had obtained three independent medical evaluations of Fackler's mental capacity which tended to show Fackler was suffering effects of progressive senile dementia, although this was not always outwardly evident. The evaluations indicated Fackler would have good days and bad days, and the evaluators questioned whether he could handle his finances without assistance or form the intent to give Poon substantial gifts.

4

Belt also testified that Bank of America had thwarted her attempts to place these evaluations on file with Fackler's accounts. Coupland denied any knowledge of this and testified that had she known about the evaluations, she would not have completed the cashier's check transaction and would have consulted with the bank's legal department. The bank employees involved in these transactions were trained to spot red flags of elder abuse and observed nothing unusual about any of the transactions. Coupland testified that she had no real concerns during the December transactions because Fackler "seemed like Morely [to her]."

At the close of the evidence, the district court found that Belt did not satisfy her burden of rebutting the validity of the Meritrust Account or the Cashier's Check by clear and convincing evidence and entered judgment in favor of Poon. In making its ruling, the district court made extensive oral findings that highlighted various circumstances indicating that Fackler was competent and that Poon did not exert undue influence. Significantly, the district court noted:

- The way Fackler structured the Meritrust Account to give Poon some money to honor their 14-year relationship made sense given Fackler's frugality, his desire to keep the money away from Poon's children, and the way he had already strategically planned for the bulk of his estate to go to Belt.

- Fackler's later deposit of another $250,000 into the Meritrust account was inconsistent with Belt's position that Fackler and Poon intended to set up a convenience account to which each would contribute $150,000.

- Poon's decision to leave the $250,000 deposit in the Meritrust account goes counter to Belt's claim of undue influence or suspicious circumstances.

- Even if Fackler suffers from senile dementia, the evidence at best says that it is a progressive disease. While Fackler may have been confused at times, he was known to have good days and bad days. His calculation skills in

5

funding the Meritrust account and in calculating the amount of the cashier's check, combined with his transacting of these transfers without triggering bank officials' concerns indicate that the transactions took place on his good days.

- In December 2013, Fackler was able to help Belt and his financial advisor sift through the extensive documentation of his finances he stored at his home in boxes and safes.

The court also noted that Belt took inconsistent positions on Fackler's mental competence, depending on how it helped or hindered her case. Belt wanted the court to extrapolate back from the November competency evaluations to find Fackler lacked the requisite intent or mental capacity to set up the Meritrust Account in June. Yet, Belt later relied on Fackler's mental competence when she had him execute the durable power of attorney while he was in the hospital in October and when she had him execute an affidavit in July 2014 in support of her motion for summary judgment.

The district court's observations indicated it had considered Belt's evidence in the light of other competent evidence and that it was not enough to clearly and convincingly establish that Fackler lacked mental competency or that the transfers happened under suspicious circumstances.

Belt timely appealed from the judgment.

*Burden of Proof*

We first address a recurring theme running through Belt's basic arguments on appeal:  The district court erred as a matter of law in assigning the burdens of proof on her claims of incapacity and/or undue influence. In her brief, Belt argues that, even if Poon satisfied her burden to prove the Meritrust Account and the Cashier's Check were

6

gifts to her, the district court should have required Poon to bring forth clear and convincing evidence to: (a) make a prima facie showing of Fackler's competence to gift property; (b) disprove suspicious circumstances; and (c) prove that she did not exert undue influence over Fackler. Belt contends that once she merely identified suspicious circumstances surrounding these transactions, the burden was on Poon to disprove undue influence by clear and convincing evidence.

The assignment of the burden of proof involves a question of law subject to our unlimited review. *In re G.M.A.*, 30 Kan. App. 2d 587, 593, 43 P.3d 881 (2002). The burden of proof in cases such as that raised herein by Belt is clearly established in the recent decision of the Kansas Supreme Court in *Cresto v. Cresto*, 302 Kan. 820, 358 P.3d 831 (2015).

First, the proponent of the transaction or document alleged to have resulted from undue influence must "proffer[] a prima facie case for validity." *Cresto*, 302 Kan. at 842. "The term 'prima facie' is defined . . . as sufficient to establish a fact or raise a presumption unless disproved or rebutted." *In re Adoption of X.J.A.*, 284 Kan. 853, Syl. ¶ 5, 166 P.3d 396 (2007). If the prima facie showing of validity is made, the burden shifts "to the [party alleging undue influence] to show the requisite relationship and suspicious circumstances to create the presumption of undue influence." *Cresto*, 302 Kan. at 842. This burden must be satisfied by clear and convincing evidence. *In re Estate of Bennett*, 19 Kan. App. 2d 154, 163, 865 P.2d 1062, *rev. denied* 254 Kan. 1007 (1994). If the presumption of undue influence is established, "the burden shifts back to the proponent of the [transaction or] document to rebut the presumption." *Cresto*, 302 Kan. at 842.

The record discloses the district court properly announced and applied the correct order and quantum of proof as established in *Cresto*. Absent some indication the Supreme Court is departing from its position so recently stated, we are duty bound to follow

*Cresto*. See *Farley v. Above Par Transportation*, 50 Kan. App. 2d 866, 877, 334 P.3d 883 (2014), *rev. denied* 302 Kan. ___ (July 24, 2015).

*Parol Evidence*

Belt argues on appeal that Poon unlawfully withdrew $150,474 from the Meritrust Account. Belt attempted to admit parol evidence in support of her contention the funds in the account belonged solely to Fackler. She claims her evidence would show that Fackler and Poon intended to create a convenience account to assist in providing for each other's health care, to be funded by a $150,000 contribution from each of them, but that Poon failed to make her contribution. Belt further proffered that Poon had agreed to return the $150,000, an allegation which Poon contested. Belt suggests the district court erred as a matter of law in refusing to admit and consider her evidence as to the intention of the parties regarding ownership of the Meritrust Account. We do find it curious that Belt offers no suggestion as to why Fackler, with an estate of over $2 million, would require health care assistance from Poon, nor does she suggest Poon would have had the resources to have made such a contribution.

The gist of Belt's argument is that the district court erroneously excluded her parol evidence of the unequal ownership of the Meritrust Account because it was deemed to be immaterial to the issue of Poon's burden of presenting a prima facie case that the Meritrust Account was valid. Evidence is material when the fact it supports is in dispute or in issue in the case. This court conducts de novo review of the materiality of evidence. *State v. Bowen*, 299 Kan. 339, 348, 323 P.3d 853 (2014).

Poon testified that on June 15, 2013, Fackler surprised her by taking her to Meritrust and depositing $150,000 into the money market account he had set up in their names as joint tenants with right of survivorship. Fackler partially funded the Meristrust Account with a check from life insurance proceeds in the amount of $131,732.61, and the

8

balance with a personal check which he calculated and wrote out in the amount of $18,267.39. Prior to this time, Fackler and Poon had maintained separate finances, but Fackler had shared with Poon details of his assets which he valued at more than $2 million and had placed in trust for estate planning purposes. Fackler told Poon he wanted her to have the money in the Meritrust Account because he loved her more than anybody else in the whole world. Fackler set up the account in joint tenancy so that if anything happened to Poon, the money would not go to Poon's children.

To meet her burden of establishing a prima facie case of the Meritrust Account as a valid joint tenancy, Poon admitted a copy of the Meritrust Membership Application/Account Agreement signed by her and Fackler, on which a box is checked next to the words deeming the ownership of the account as "Joint—with survivorship."

The creation of a joint tenancy bank account is governed by statute. See K.S.A. 58-501. In discussing the effect of the statute, this court has conclusively ruled:

> "Although both contract law and the joint tenancy statute, K.S.A. 58-501, rely on the intent of the parties, under Kansas case law, a bank signature card designating that an account is held as a 'joint tenancy and not tenancy in common' demonstrates the parties' intent to hold the account as joint tenants and prohibits the introduction of parol evidence to prove otherwise. *Agrelius v. Mohesky*, 208 Kan. 790, Syl. ¶¶ 3, 4, 5, 494 P.2d 1095 (1972); see K.S.A. 58-501." *Wilson v. Wilson*, 37 Kan. App. 2d 564, 575, 154 P.3d 1136 (2007).

See also *Robertson v. Ludwig*, 244 Kan. 16, 19, 765 P.2d 1124 (1988).

Thus, the district court properly denied Belt's attempt to contravene the statutory presumption of validity. The intent of Fackler and Poon was not a material fact for purposes of establishing a prima facie showing that the Meritrust Account was valid.

We note, however, the district court did admit and consider Belt's parol evidence for purposes of her responsive burden to establish a presumption of undue influence by clear and convincing evidence. The district court, as the trier of fact, weighed and considered the evidence suggestive of undue influence regarding the Meritrust Account and determined that Belt had not met her burden to establish a presumption of undue influence—a species of fraud—by clear and convincing evidence. Based on this finding, Poon was not required to further respond with rebuttal evidence. See *Cresto*, 302 Kan. at 842.

Belt further argues, however, that her evidence should have been considered by the district court as showing Poon held the funds in constructive trust for Fackler. But the agreed pretrial order, which controls the issues to be determined at trial, does not set forth a claim of unjust enrichment—a prerequisite for the equitable remedy of constructive trust. "Generally, a trial court should not entertain an issue or claim that is omitted from the pretrial order. Rather, the pretrial order controls the course of the action unless modified to prevent manifest injustice." *Bussman v. Safeco Ins. Co. of America*, 298 Kan. 700, 708, 317 P.3d 70 (2014). An issue not raised before the trial court cannot be raised on appeal. See *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 403, 266 P.3d 516 (2011). Thus, any suggestion regarding a constructive trust is not properly before this court.

Belt also cites several authorities which she claims support her theory that there is always a rebuttable presumption of joint ownership in a joint tenancy account and therefore parol evidence is always admissible to prove the parties' intent. See, *e.g.*, *Brewer v. Schalansky*, 278 Kan. 734, 742, 102 P.3d 1145 (2004) (citing *Walnut Valley State Bank v. Stovall*, 223 Kan. 459, 462, 574 P.2d 1382 [1978], in holding SRS could rebut presumption of prospective Medicaid beneficiary's equal ownership in stocks held in joint tenancy with nieces with evidence regarding "owner's relative contribution to asset and donative intent"); *Purma v. Stark*, 224 Kan. 642, 644-45, 585 P.2d 991 (1978)

(citing *Walnut Valley*, 223 Kan. 459, Syl. ¶¶ 1-3, in applying rebuttable presumption of equal ownership in action to garnish property held in joint tenancy); *Walnut Valley*, 223 Kan. at 459 (applying the presumption of equal ownership in garnishment action seeking to establish debtor's interest in property held in joint tenancy); *Schierenberg v. Hodges*, 221 Kan. 64, 558 P.2d 133 (1976) (Severance of the joint tenancy into a tenancy in common between a husband and wife gives rise to a rebuttable presumption of equal ownership; that is, the husband and wife each own one-half of the account.); *Edwards v. Ledford*, 201 Kan. 518, 526, 441 P.2d 834 (1968) (holding that "in the absence of a signed signature card or agreement containing language that the depositor clearly intended to create a joint tenancy account, parol evidence is admissible to show such an agreement"). None of these circumstances are present in this case.

These cases simply do not say what Belt proposes. Her argument would stand the statute—and cases interpreting the statute—on their head. A bank signature card designating without ambiguity that an account is held in joint tenancy with right of survivorship demonstrates the parties' intent and prohibits the introduction of parol evidence to prove otherwise.

We find no error in the way the district court determined the admission and consideration of Belt's evidence.

*Validity of Gifts*

Belt also suggests the district court applied the wrong legal standards in holding that Poon met her burden to establish the money was a gift from Fackler. Once again, it appears that Belt misconstrues the appropriate burden of proof.

"The burden of proving that a gift was made, including the existence of all the elements necessary to its validity, is upon the party asserting the gift." *Truax v.*

11

*Southwestern College*, 214 Kan. 873, Syl. ¶ 3, 522 P.2d 412 (1974), *superceded by statute on other grounds In re Estate of Morton*, 241 Kan. 698, 705, 769 P.2d 616 (1987). Again, Poon's burden in this regard was only to establish a prima facie showing of a valid gift. This court conducts de novo review of whether a prima facie case was presented. *Becker v. Knoll*, 291 Kan. 204, 206, 239 P.3d 830 (2010).

Our courts have defined prima facie evidence as "'evidence sufficient to sustain a verdict in favor of the issue it supports, even though it may be contradicted by other evidence.' [Citation omitted.]" 291 Kan. at 206. As the reviewing court, this court "does not weigh the evidence to find the more meritorious position, but merely determines whether the evidence exists to establish the position in the first place." 291 Kan. at 207.

The elements of a gift are traditionally intent, delivery, and acceptance. "The intention of a donor to make a gift inter vivos may be manifested by acts as well as words, or may be inferred from all the facts and circumstances." *Stevenson v. Hunter*, 131 Kan. 750, 293 P. 500 (1930).

The gift analysis does not really pertain to the Meritrust Account, since Fackler's intent to give Poon the money is established by the signature card proving the account was explicitly established as a joint tenancy with rights of survivorship. Poon's evidence as to how and why Fackler set up the account in this manner emphasized his intent to give her the money. The money was deposited in the account and Poon had legal access to the account.

We find it inconsistent, however, that Belt would have had the district court extrapolate back from the November evaluations to show Fackler lacked capacity to make the Meritrust gift. Belt proffered evidence that Fackler apparently had the capacity to set up a complicated "convenience account," but she now claims that he did not have the capacity to set up a simple joint tenancy account.

As for the Cashier's Check, Poon testified Fackler told her he wanted her to have the money because she had made him so happy and he had not otherwise provided for her in his estate. Fackler had Poon take him to the bank to deposit the proceeds he received from investments he had cashed in. When he was not able to access the funds that day due to bank policy, he had Poon drive him back to the bank the next day. He expressed the same intent to give the money to Poon, had an extensive discussion with Coupland regarding his intentions, and presented his written calculations as to how he wanted the money divided. Poon did not participate in the discussion because Fackler told her that he was conducting business. Coupland observed nothing of concern in Fackler's behavior and prepared the check in accordance with his expressed wishes. Poon's evidence establishes prima facie Fackler's intent to make a gift to her. Fackler then delivered the check to Poon, telling her "Merry Christmas." Poon completed acceptance of the gift by immediately depositing the check into her personal account.

Based on this evidence, the district court did not err in finding Poon presented a prima facie case the cashier's check was a gift. The burden then shifted to Belt to rebut this prima facie showing by clear and convincing evidence.

Belt argues the district court erred as a matter of law concluding she did not meet her burden. Belt focuses on the opinions in Fackler's three mental competency exams that he lacked the requisite mental competency to independently handle his financial affairs. Belt claims the district court erroneously ignored that evidence in favor of lay testimony, particularly from Coupland, concerning perceptions of Fackler's credibility as he conducted business. We note again, however, all the evaluations were rather guarded in expressing opinions in legalese, and at least one of the evaluators admitted a sign of capacity on a good day would be that Fackler maintained the same intention on the subsequent day.

Belt cites *Stafford v. Goode*, 193 Kan. 120, 129, 392 P.2d 140 (1964). There, our Supreme Court held: "Where the question is whether a person is afflicted with a particular form of mental disorder, which can be concealed from the laymen by a personality facade, medical testimony presents the most clear and satisfactory evidence." Belt also cites to our Supreme Court's concerns with this court's questioning of the credibility of expert opinions concerning a criminal defendant's competency by independently analyzing the significance of certain test scores. In that regard, our Supreme Court commented: "That task was best left to the experts." *State v. Johnson*, 289 Kan. 870, 888-89, 218 P.3d 46 (2009). Belt apparently believes these cases hold that where medical testimony of mental competency is admitted, the court cannot look beyond that evidence. Thus, Belt argues that where, as here, a court considers lay testimony on the issue of mental competency as superior to the medical testimony, that court commits reversible error. However, neither of these authorities support such a conclusion.

Pointedly, in discussing mental competency in the analogous context of the intent to create a will, our Supreme Court has explained:

> "[A]n aged person who was "'feeble-minded and incapable of managing his affairs'" and who needed a guardian could, three weeks later, be competent to make a will. *In re Estate of Hall*, 165 Kan. 465, 469, 195 P.2d 612 (1948) (quoting *Mingle v. Hubbard*, 131 Kan. 844, 293 P. 513 [1930]). . . . The test is not whether a person has capacity to enter into a complex contract or to engage in intricate business transactions or has absolute soundness of mind, but whether a person can understand what property he has and how he wants it to go at his death, even if he is feeble in mind and decrepit in body. 165 Kan. at 469-70. *The testimony of expert witnesses is important in determining mental competency and should receive proper consideration by the trial court, but does not bind the trier of fact.* 165 Kan. at 469." (Emphasis added.) *Matter of Estate of Raney*, 247 Kan. 359, 367-68, 799 P.2d 986 (1990).

Regardless, the record reveals the district court did not disregard Fackler's competency evaluations in favor of Coupland's testimony. Rather, the court carefully weighed Belt's evidence of Fackler's mental incompetence and ultimately found she did not rebut Poon's prima facie showing that Fackler was sufficiently competent form an intent to gift Poon this money. Belt presents this court with no basis to overturn that negative finding without reweighing the evidence, which this court will not do. See *Hamel v. Hamel*, 296 Kan. 1060, 1078, 299 P.3d 278 (2013) (explaining a court's finding that a party did not meet his or her burden of proof is negative factual finding that appellate court will reverse only upon showing that district court arbitrarily disregarded undisputed evidence or relied upon some extrinsic consideration such as bias, passion, or prejudice to reach its decision).

We find no error in the district court's holding Poon established the validity of the gifts, and Belt failed to present clear and convincing evidence to the contrary.

*Conclusion*

In summary, we find the district court committed no reversible error. The district court applied the appropriate burdens of proof in evaluating Belt's claims. The court admitted and considered in proper context the material evidence relevant to each issue in light of the burdens of proof. The district court weighed the evidence and assessed the credibility of the witnesses in its role as the trier of fact, as evidenced by its extensive oral recitation of its findings and reasoning. The district court's decision that Poon had met her burden to establish a prima facie case for the validity of the Meritrust Account and the gift of the Cashier's Check is supported by the evidence. The district court's conclusion Belt did not meet her burden of rebutting Poon's prima facie case by clear and convincing evidence is also supported by the record.

Affirmed.