(199 P.3d 786)
No. 99,548

James Becker and Norman Becker, *Appellants*, v. Harold Knoll, *Appellee*.

Opinion filed December 24, 2008.

*Philip Ridenour*, of Ridenour and Ridenour, of Cimarron, for appellants.

*Charles E. Owen, II*, of Law Offices of Charles E. Owen, II, P.A., of Garden City, for appellee.

Before MCANANY, P.J., GREEN and BUSER, JJ.

MCANANY, J.: This appeal arises from the district court's decision denying relief to Norman and James Becker, shareholders in the Finney County Water Users Association (FCWUA), on their claims against FCWUA President Harold Knoll for his breach of fiduciary duties by using FCWUA employee Leonard Morehouse for Knoll's own purposes.

FCWUA is a corporation that maintains 40 to 50 miles of ditches used to draw water from the Arkansas River to irrigate land owned by FCWUA shareholders. Knoll was a shareholder of FCWUA, as well as a director and its president. Morehouse was employed as FCWUA's full-time ditch superintendent or "ditch rider." Knoll supervised Morehouse's work. The Beckers claim that Knoll breached his fiduciary duties to FCWUA by engaging in improper self-dealings by using Morehouse to do work on Knoll's farm at times when Morehouse should have been tending to FCWUA's ditches. The Beckers sought damages and Knoll's removal as a director and president of FCWUA.

The parties are well familiar with the trial testimony, and we need not recount it here. After taking the matter under advisement, the district court issued its extensive and detailed memorandum

decision, finding that the Beckers failed to present a prima facie case requiring rebuttal by Knoll. The court further found:

"[T]he totality of the evidence presented has failed to show to the court that it is more probably true than not true that any damages were caused to the [plaintiffs] by the neglect, willful or otherwise, of the defendant in his duties owed to the Corporation in the supervision of the ditch [rider] or any private use of the ditch [rider] on Corporation time."

In this appeal the Beckers claim their evidence at trial was sufficient to establish a prima facie case of self-dealing by Knoll. As a result, they contend the burden shifted to Knoll to prove the fairness of his transactions with Morehouse. Thus, according to the Beckers, the district court erred when it simply weighed the totality of the evidence without recognizing Knoll's burden to show fairness.

*Standard of Review*

Before addressing the merits of the Beckers' claims, we must determine our standard of review. To do that we must separately consider the steps required to resolve the liability issue in a case in which a fiduciary is charged with breach of the duty to refrain from self-dealing to the detriment of those to whom fiduciary duties are owed.

*Newton v. Hornblower, Inc.*, 224 Kan. 506, 582 P.2d 1136 (1978), is a shareholder derivative action against corporate directors who, plaintiff claimed, engaged in self-dealings to the detriment of the corporation by charging excessive management fees and salaries, misappropriating corporate funds and assets, and misappropriating the corporation's business opportunities. Our Supreme Court stated:

"Any unfair transaction induced by a fiduciary relationship between the parties gives rise to a liability with respect to unjust enrichment of the fiduciary. Where such transaction is attacked, the burden of proof is on the fiduciary to establish the fairness of the transaction, and to this end he must fully disclose the facts and circumstances, and affirmatively show his good faith." 224 Kan. at 518.

The issue was later addressed by this court in *Richards v. Bryan*, 19 Kan. App. 2d 950, 965, 879 P.2d 638 (1994). *Richards* was an appeal following the district court's entry of summary judgment

against plaintiff. Plaintiff claimed that defendants breached their fiduciary duties, and thereby denied plaintiff the expected benefits of his investment in the company, by engaging in financial manipulations that made the company appear to be unprofitable in order to avoid paying dividends and bonuses.

Notwithstanding some rather broadly drawn pronouncements in *Newton*, the *Richards* court declared that *"Newton* requires a complaining party to offer more than a bald allegation of impropriety, while still assigning the ultimate burden of proof on the fiduciary." *Richards*, 19 Kan. App. 2d at 965. In discussing the burden-shifting procedure, the court explained that the first step requires a plaintiff to establish a prima facie case of self-dealing. "After that was established, the burden then shifted to the defendant to prove that its actions were done in good faith. After the defendant presented its evidence, the plaintiff was then afforded the opportunity to counter with rebuttal arguments. [Citation omitted.]" 19 Kan. App. 2d at 965. This clarification of *Newton* by the *Richards* court was cited with approval in *Welch v. Via Christi Health Partners, Inc.*, 281 Kan. 732, 757-58, 133 P.3d 122 (2006).

The *Richards* court applied the familiar de novo standard of review in determining that the district court erred in granting summary judgment because, "[w]hile falling far short of ultimately proving his allegation, Richards' evidence did create a question of fact which was adequate to establish a prima facie showing." 19 Kan. App. 2d at 966.

The familiar notion of prima facie evidence was defined in *Van Brunt, Executrix v. Jackson*, 212 Kan. 621, 623, 512 P.2d 517 (1973), as evidence which, if unexplained or uncontradicted, is sufficient to submit the case to the factfinder and to sustain a judgment in favor of the issue which it supports. Though it may support a judgment, prima facie evidence may be contradicted by other evidence.

This leads us back to the original issue of our standard of review. In a breach of fiduciary duties case involving self-dealing, the issue of whether plaintiff has established a prima facie case does not involve the weighing of evidence, just as summary judgment proceedings do not turn on the weight of the evidence. If the weight

of the evidence were an issue, on appeal we would defer to the factfinder to make that determination. But here, as in summary judgment proceedings, where the weight of, and credit to be given, the evidence does not control, we are as capable as the trial court to determine if a prima facie showing has been made. Accordingly, our standard of review on the threshold issue of whether plaintiff has made a prima facie showing of breach of fiduciary duties by self-dealing, just as our standard of review in summary judgment proceedings, is de novo.

Once plaintiff makes that prima facie showing of a breach of fiduciary duties by self-dealing, the burden of proof shifts to the defendant. Since by definition prima facie evidence is always subject to being contradicted by other evidence, the defendant then has the opportunity to prove that the challenged transaction never took place or that the transaction was fair and undertaken in good faith. On these issues, the factfinder must weigh any conflicting evidence to determine which is more credible in order to arrive at a final judgment. Since this exercise is beyond an appellate court's capability upon review of the cold record, we review the factfinder's factual determinations using the substantial evidence standard, viewing the evidence in the light most favoring the prevailing party at trial.

*Prima Facie Case*

Self-dealing is defined as "[p]articipation in a transaction that benefits oneself instead of another who is owed a fiduciary duty. For example, a corporate director might engage in self-dealing by participating in a competing business to the corporation's detriment." Black's Law Dictionary 1390 (8th ed. 2004). The duty of loyalty prohibits officers and directors from engaging in self-dealing and requires that the corporation "receive the full benefit of transactions in which the officer engages on the corporation's behalf, without thought to personal gain." 18B Am. Jur. 2d, Corporations §1480, pp. 471-72. Thus, to demonstrate self-dealing, a plaintiff must show not only personal dealings by the fiduciary, but also that the personal dealings were at the expense of benefits the corporation should have enjoyed. This is consistent with the dec-

laration in *Newton* that the questioned transaction must be "unfair." 224 Kan. at 518.

The district court's pretrial order accurately described the burden-shifting process. It stated that the plaintiffs had the burden to establish a prima facie case that the challenged transactions occurred. Following that, the burden would shift to the defendant either to establish that these transactions did not occur or to establish the fairness of these transactions and that they were undertaken in good faith. After that, the plaintiffs would have the opportunity to rebut defendant's evidence and contentions.

One would presume that if at the close of plaintiffs' case the Beckers had failed to present a prima facie case of unfair transactions, the burden would not shift to Knoll and the case would simply end with the entry of judgment as a matter of law at the close of plaintiffs' case pursuant to K.S.A. 60-250(a)(1). But Knoll made no such motion at the close of the Beckers' case-in-chief, suggesting that Knoll conceded that the Beckers had made a prima facie case which he needed to rebut. Knoll proceeded to present his case-in-chief immediately after the Beckers rested their case. At the close of all the evidence, the court invited the parties to submit their summations in written form. In Knoll's written summation he refers to the Beckers failing to "prove" a prima facie case, but he did not move for judgment as a matter of law at the close of all the evidence pursuant to K.S.A. 60-250.

Following its detailed analysis of the testimony, the district court stated in its memorandum decision and order:

"The plaintiffs in this matter have failed to present to the court a prima facie case sufficient to require the defendant to rebut the allegation. Further, the totality of the evidence presented has failed to show to the court that it is more probably true than not true that any damages were caused to the defendants by the neglect, willful or otherwise, of the defendant in his duties owed to the Corporation in the supervision of the ditch [rider] or any private use of the ditch [rider] on Corporation time."

The Beckers argue that two witnesses testified at trial that Knoll told them that Morehouse worked on Knoll's farm exclusively for a 30- to 45-day period in 2002 when Morehouse should have been tending to FCWUA's ditches. They argue that this was corrobo-

rated by a contemporaneous letter that was introduced into evidence. While the Beckers acknowledge that there was conflicting evidence on this point, they assert that this testimony established a prima facie case of a fiduciary's (Knoll's) unfair transaction involving self-dealing to FCWUA's detriment.

The district court made the following observations about this aspect of the testimony:

"It was testified that Knoll told several people that Morehouse had worked on Knoll's farm for 30 to 45 days continuously at one point in time. Both Knoll and Morehouse denied that fact, and Knoll denied making the statement. It is noted that during this time Morehouse was supposedly working exclusively for Knoll there was water in the ditch which is a tremendously busy period for both Morehouse and Knoll in simply trying to get the water through the system. It is also noted that the detailed notes kept by one of the proponent of this statement having been uttered made no note of this statement that, if true, would be apparent at the time of its making of a significant incident of misfeasance or malfeasance on the part of Morehouse and Knoll. The court will not accept this urged confession of misfeasance or malfeasance as established fact."

The Beckers assert there was evidence of other instances when Morehouse was seen working at Knoll's farm. While this additional evidence may establish a prima facie case of Knoll using FCWUA's employee to do work personal to Knoll, it does not establish that the transaction was unfair. The prima facie case the Beckers must establish is one of unfair transactions, not merely transactions between Knoll and Morehouse.

Nevertheless, we agree with the Beckers that the evidence presented regarding Morehouse's exclusive work for Knoll for a 30- to 45-day period established a prima facie case that shifted the burden to Knoll with respect to this particular transaction. However, even if we include the evidence of these other transactions as a prima facie case of Knoll's wrongdoing, this does not end the analysis.

Since by its very nature prima facie evidence is subject to being explained or contradicted, Knoll could meet his burden by proving either that Morehouse did not work for him during the claimed periods or that the work Morehouse did was not at the expense of minding FCWUA's ditches. If the district court would have found that the Beckers presented a prima facie case on these issues, its next task would have been to weigh the conflicting evidence and

determine if Knoll met his burden to rebut the Beckers' prima facie case. Thus, we must turn to the second step in our analysis to determine whether, viewed in the light most favoring Knoll, there is substantial evidence to support the district court's findings supporting its judgment. That analysis leads us to conclude that any error by the district court in declaring that the Beckers failed to present a prima facie case ultimately was harmless.

*Defendant's Burden of Proof*

In considering whether Knoll met his burden of rebutting the Beckers' prima facie case, we examine all the evidence, both direct and circumstantial. See *Yount v. Deibert*, 282 Kan. 619, Syl. ¶ 1, 147 P.3d 1065 (2006). In examining all the evidence, we include evidence introduced by both the Beckers and by Knoll to determine if Knoll met his burden. See *Edwards v. Anderson Engineering, Inc.*, 284 Kan. 892, 904, 166 P.3d 1052 (2007).

In entering judgment in favor of Knoll, the district court found that Morehouse worked his requisite hours at all times, that Morehouse worked on FCWUA's equipment at Knoll's farm, that Morehouse's work on Knoll's farm was primarily voluntary, and that there was always something to do on FCWUA's 50 miles of ditches no matter how long Morehouse worked on them. The district court found Morehouse to be a credible witness and believed that he devoted the requisite time to FCWUA's ditches.

The district court rejected the contention that photos introduced into evidence which showed ditches overgrown with weeds was evidence of neglect because the ditches in the photos had recently been filled with water and had not sufficiently dried out to allow the weeds to be cut. The court also found that the flooding of James Becker's property did not establish neglect of the ditches and that observations of Morehouse working on Knoll's farm did not establish that Morehouse should have been working for FCWUA at the time. The court believed the testimony of Knoll and Morehouse regarding the time Morehouse spent at Knoll's farm over testimony to the contrary.

The Beckers contend that in order to meet his burden of proof Knoll was required to prove not only that Morehouse never worked

on Knoll's farm while on the clock for FCWUA, but also to produce at trial records that showed when Morehouse was on company time, when he was off work, when he worked on the farm, what labor was exchanged for his farm work, when that occurred, and the exchange rate for Morehouse's labor. The Beckers cite, and we find, no authority that defines the specific character of the evidence needed for Knoll to meet his burden.

Ultimately, the district court concluded that the Beckers failed to show that Knoll used Morehouse to work on his farm "to the detriment of the Corporation when Morehouse should have been working for the Corporation." The district court found no credible evidence of wrongful self-dealing by Knoll. More importantly, the district court relied on evidence affirmatively presented by Knoll that established that he successfully rebutted the Beckers' prima facie showing.

The Beckers presented evidence that Morehouse was on Knoll's land doing work that was unlikely related to his work for FCWUA. However, none of the witnesses stated that the work was being done when Morehouse should have been working for FCWUA. Although Morehouse was required to work whenever something was needed on the ditches, the shareholders also told Morehouse he was free to get another job, and all agreed that he was free to spend his personal time as he wished.

We find substantial evidence in the record to support the district court's findings.

Finally, the Beckers argue that the district court erred in improperly weighing the testimony of their witnesses. The weight and credibility of the evidence at trial is within the exclusive province of the trial court, not this court on appeal. See *Newton,* 224 Kan. at 519. The Beckers' reliance on *Richards* for the proposition that the district court improperly weighed the evidence is misplaced. *Richards* was decided in the district court on a motion for summary judgment. At that stage of the proceedings, the plaintiff "was required to present facts which, when viewed in the light most favorable to him, established a prima facie case of breach of fiduciary duty." 19 Kan. App. 2d at 965-66. Unlike in *Richards,* the present case comes to us after trial on the merits and after the district court

fulfilled its responsibility of weighing and resolving conflicts in the evidence at trial.

Accordingly, we conclude that there is substantial evidence to support the district court's findings and its initial error in stating that the Beckers failed to present a prima facie case was harmless.

Affirmed.