No. 99,548

JAMES BECKER and the ESTATE OF NORMAN BECKER, Deceased, by and through WILLIAM BECKER, as Special Administrator, *Appellants*, v. HAROLD KNOLL, *Appellee*.

(239 P.3d 830)

Opinion filed September 17, 2010.

*Philip Ridenour*, of Ridenour and Ridenour, of Cimarron, argued the cause and was on the briefs for appellants.

*Charles E. Owen, II*, of Law Offices of Charles E. Owen, II, P.A., of Garden City, argued the cause and was on the briefs for appellee.

The opinion of the court was delivered by

ROSEN, J.: The Finney County Water Users Association (FCWUA) is a private Kansas corporation originally chartered in 1930. One purpose of the corporation is to provide the shareholders with irrigation water by maintaining a system of ditches and canals that feed water from the Arkansas River to a series of irrigation laterals north of Garden City.

FCWUA employs a full-time "ditch rider," whose job is to maintain the ditches and canals. The ditch rider is also responsible for directing water into the laterals for delivery to the shareholders. Leonard Morehouse was the ditch rider from March 1998 through March 2003. He was hired with the understanding that he would work a minimum of 40 hours a week. He usually worked longer hours in the summer, when he might work as many as 100 hours in a week, than in the winter, when he might work as few as 23 hours in a week.

Defendant Harold Knoll was elected president of FCWUA in 1995 and has remained in office since that time. Knoll supervised Morehouse and gave him weekly work assignments. In December 2001, FCWUA amended its bylaws to allow the president and other board members to employ ditch association employees privately and to require the employing board member to document any such employment.

Witnesses disagreed on the amount of time expended and the nature of the work performed by Morehouse on both FCWUA duties and for Knoll's private enterprises. There was disputed testimony that Morehouse worked on Knoll's farm for some 30 to 45 days during the summer of 2002 and was not maintaining ditches during that time. Knoll testified that Morehouse "pitched in and helped" on Knoll's farm several times a week "after he had his full days work for the ditch company," but that he never took Morehouse away from his job duties for the ditch company to work on his farm. Some of Morehouse's work on Knoll's farm was performed without compensation and some was compensated in labor exchange, beef, and a check for $500. As stated above, the corporate bylaws were amended to require maintaining records of the

use of corporation employees for private purposes. Knoll nevertheless did not keep records of the time that Morehouse devoted to working on Knoll's farm and the time that Morehouse worked on the irrigation system, and there was testimony that Knoll refused to keep such records.

There was testimony that the plaintiffs and other shareholders experienced both flooding and lack of irrigation water because of poor canal maintenance. The plaintiffs alleged they lost crops and were forced to find other sources of irrigation water.

In May 2004, the plaintiffs filed suit against Knoll, seeking damages for breach of a fiduciary duty and seeking his removal as an officer and director of the corporation. After a trial to the bench, the district court found that the plaintiffs had failed to establish a prima facie case and had failed to demonstrate that Knoll's conduct resulted in damages to the plaintiffs. The plaintiffs took a timely appeal to the Court of Appeals. The Court of Appeals affirmed the resulting judgment in favor of Knoll, which found that, while the plaintiffs had succeeded in establishing a prima facie case, the factual findings by the district court nevertheless supported judgment for Knoll. *Becker v. Knoll*, 40 Kan. App. 2d 1049, 199 P.3d 786 (2008).

This court granted the plaintiffs' petition for review and subsequently granted a motion to substitute William Becker, as special administrator of the estate, for Norman Becker, who had passed away.

The first issue before us relates to the evidentiary burdens that the law places on the opposing parties. The district court found that the plaintiffs failed to make a prima facie case for self-dealing on Knoll's part. The Court of Appeals reversed this finding but held the error was harmless, and we agree in part and reverse in part, finding the error was not harmless.

The proper standard for reviewing whether a plaintiff has presented a prima facie case is de novo. We have held that "[p]rima facie evidence is evidence sufficient to sustain a verdict in favor of the issue it supports, even though it may be contradicted by other evidence." *Frick Farm Properties v. Kansas Dept. of Agriculture*, 289 Kan. 690, Syl. ¶ 10, 216 P.3d 170 (2009). In *Frick*, this court

considered whether the defendant had established a prima facie case for terminating a water right. The court examined the evidence in the record and concluded it was sufficient to meet statutory requirements for a prima facie case. See 289 Kan. at 708. This analysis is consonant with de novo review. The reviewing court does not *weigh* the evidence to find the more meritorious position but merely determines whether the evidence *exists* to establish the position in the first place. The Court of Appeals correctly held that determining whether a plaintiff presented a prima facie case is a matter of law subject to de novo review. *Becker*, 40 Kan. App. 2d at 1052-53.

The district court and the Court of Appeals found that, in a suit alleging a breach of fiduciary duties by a corporate officer, the plaintiff has the burden of establishing a prima facie case of the breach. If the plaintiff succeeds in meeting this obligation, the burden shifts to the defendant to show by clear evidence that the defendant acted in fairness and good faith to the corporation. This analysis is correct.

We have previously held:

"Any unfair transaction induced by a fiduciary relationship between the parties gives rise to a liability with respect to unjust enrichment of the fiduciary. Where such transaction is attacked, the burden of proof is on the fiduciary to establish the fairness of the transaction, and to this end he must fully disclose the facts and circumstances, and affirmatively show his good faith. [Citations omitted.] Where the fairness of the transaction is challenged, there must be an affirmative showing of fairness and good faith, the burden being upon the parties seeking to sustain such transactions to prove this by clear and satisfactory evidence. [Citations omitted.]" *Newton v. Hornblower, Inc.*, 224 Kan. 506, 518, 582 P.2d 1136 (1978).

In *Richards v. Bryan*, 19 Kan. App. 2d 950, 965, 879 P.2d 638 (1994), our Court of Appeals explained the burden-shifting this way:

"*Newton* requires a complaining party to offer more than a bald allegation of impropriety, while still assigning the ultimate burden of proof to the fiduciary. This somewhat confusing shift in the burden of proof was very well explained in *Cookies Food Products v. Lakes Warehouse*, 430 N.W.2d 447 (Iowa 1988). In *Cookies*, the plaintiff was first required to make out a prima facie showing of self-dealing. After that was established, the burden then shifted to the defendant to prove that its actions were done in good faith. After the defendant presented its

evidence, the plaintiff was then afforded the opportunity to counter with rebuttal arguments. 430 N.W.2d at 453."

Two concepts underlie this shift in the burden of persuasion. The first is that a director of a corporation owes a high fiduciary duty to the other stockholders of the corporation. *In re Hesston Corp.*, 254 Kan. 941, 982, 870 P.2d 17 (1994). "The duty of loyalty requires that the best interests of the corporation and its shareholders take precedence over any self-interest of a director, officer, or controlling shareholder that is not shared by the stockholders generally. [Citations omitted.]" *McCall v. Scott*, 239 F.3d 808, 824 (6th Cir. 2001).

Other jurisdictions have elaborated on this fiduciary duty:

" '[A] fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other. . . . The superior position of the fiduciary or dominant party affords him great opportunity for abuse of the confidence reposed in him. . . .' [Citation omitted.]" *Cadle Co. v. D'Addario*, 268 Conn. 441, 455, 844 A.2d 836 (2004).

"Corporate directors must act in their shareholders' best interests and not enrich themselves at their expense. [*Citations omitted.*] The law enforces this duty of loyalty by subjecting certain actions to unusual scrutiny. Where a director acts while under an incentive to disregard the corporation's interests, she must show her 'utmost good faith and the most scrupulous inherent fairness of the bargain.' *In re PSE & G Shareholder Litigation*, 173 N.J. 258, 801 A.2d 295, 307-308 (2002) (quoting *Weinberger v. UOP, Inc.*, 457 A.2d 701, 710 [Del.1983]); *Brundage v. New Jersey Zinc Co.*, 48 N.J. 450, 226 A.2d 585, 598-99 [1967])." *VFB LLC v. Campbell Soup Co.* 482 F.3d 624, 634-35 (3d Cir. 2007).

Kansas sets a higher standard or stricter fiduciary duty for directors and officers of corporations than some jurisdictions and imposes a very strict fiduciary duty on officers and directors of a corporation to act in the best interests of the corporation and its stockholders. *Burcham v. Unison Bancorp, Inc.*, 276 Kan. 394, 416, 77 P.3d 130 (2003); *Miller v. Foulston, Siefkin, Powers & Eberhardt*, 246 Kan. 450, 467, 790 P.2d 404 (1990).

The second concept underlying the burden-shifting approach is the business judgment rule. This rule is a presumption that in making business decisions not involving direct self-interest or self-dealing, corporate directors act on an informed basis, in good faith, and

in the honest belief that their actions are in the corporation's best interest. The party challenging the business decision has the burden to establish facts rebutting the presumption. *Kansas Heart Hospital v. Idbeis*, 286 Kan. 183, 209, 184 P.3d 866 (2008).

The business judgment rule provides directors with a "powerful presumption" "that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *In re Merck & Co. Securities & ERISA Litigation*, 493 F.3d 393, 402 (3d Cir. 2007) (citing *Rales v. Blasband*, 634 A.2d 927, 933 [Del. 1993]; *Aronson v. Lewis*, 473 A.2d 805, 812 [Del. 1984]). The business judgment rule "shield[s] internal business decisions from second-guessing by the courts. . . . Under the rule, when business judgments are made in good faith based on reasonable business knowledge, the decision makers are immune from liability from actions brought by others who have an interest in the business entity." *Green Party v. Hartz Mountain Ind.*, 164 N.J. 127, 147, 752 A.2d 315 (N.J. 2000) (citing *Courts at Beachgate v. Bird*, 226 N.J. Super. 631, 641, 545 A.2d 243 [1988]; *Sarner v. Sarner*, 62 N.J. Super. 41, 60, 162 A.2d 117 [1960]).

Because the business judgment rule is a rebuttable presumption, it places an initial burden on the party challenging a corporate decision to demonstrate the decisionmaker's "self-dealing or other disabling factor." If a challenger sustains that initial burden, then the presumption of the rule is rebutted, and the burden of proof shifts to the defendants to show that the transaction was, in fact, fair to the company. *In re PSE & G Shareholder Litigation*, 173 N.J. at 277.

" 'The threshold inquiry in assessing whether a director violated his duty of loyalty is whether the director has a conflicting interest in the transaction. Directors are considered to be interested if they either appear on both sides of a transaction . . . or expect to derive any personal financial benefit from it in the sense of self-dealing, as opposed to a benefit which devolves upon the corporation or all stockholders generally.' [Citation omitted.]" *Matter of Seidman*, 37 F.3d 911, 934 (3d Cir. 1994).

Once the business judgment rule is rebutted, "the burden then shifts to the director defendants to demonstrate that the challenged

act or transaction was *entirely fair* to the corporation and its share-holders." (Emphasis added.) *In re Walt Disney Co. Derivative Litigation*, 906 A.2d 27, 52 (Del. 2006). "If the [plaintiff is able to rebut the business judgment presumption], the burden shifts to the defendant . . . to prove *the 'entire fairness'* of the transaction to the . . . plaintiff. [Citations omitted.]" (Emphasis added.) *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993).

If the plaintiffs in the present case made a prima facie showing of self-dealing, then the burden of proof shifted to Knoll to prove that his employment of Morehouse was entirely fair to the corporation. The Court of Appeals turned to Black's Law Dictionary 1390 (8th ed. 2004) for a definition of self-dealing, which is: "Participation in a transaction that benefits oneself instead of another who is owed a fiduciary duty. For example, a corporate director might engage in self-dealing by participating in a competing business to the corporation's detriment." See *Becker*, 40 Kan. App. 2d at 1053. Other courts have also utilized this definition of self-dealing. See *Dingess v. Smith*, 2010 WL 364456, at *4 (Ohio App.); *Eagers v. Burrows*, 191 P.3d 9, 16 (Utah 2008).

The district court found that each of the allegations of impropriety on the part of Knoll was rebutted and the plaintiffs had therefore failed to sustain their burden of presenting a prima facie case. The Court of Appeals disagreed. It properly pointed to the considerable testimony that Knoll had employed Morehouse on his farm, that Morehouse had worked on Knoll's farm and not on the irrigation system for extensive stretches of time over the years of his FCWUA employment, that Knoll failed to maintain records of Morehouse's work for him and for FCWUA as required by corporate bylaws, and that the result was poor maintenance of the system and damages to land and crops. Although the district court found the evidence rebutted and unpersuasive, the Court of Appeals concluded that the evidence sufficed to establish a prima facie case of self-serving conduct on Knoll's part. *Becker*, 40 Kan. App. 2d at 1054-55.

This analysis is correct. Under the Black's Law Dictionary definition of self-serving conduct, the plaintiffs' evidence was sufficient to sustain a verdict in favor of the plaintiffs' claim of self-

serving breach of a fiduciary duty, even though it may have been contradicted by other evidence.

Because it found that the plaintiffs failed to make a prima facie case, the district court never addressed whether Knoll proved by clear and satisfactory evidence that he acted in fairness and good faith. The Court of Appeals held, however, that the specific findings by the district court demonstrated that it considered every allegation of impropriety to lack credibility or to have been rebutted. These findings were supported by the record and sufficed to affirm the judgment for Knoll. 40 Kan. App. 2d at 1056-57. It is this conclusion that is in question on review, and it goes specifically to the standard of review.

The district court found:

"The Plaintiff has the duty to first establish that the personal relationship or business relationship [between] the Corporation's employee and the Corporation's President were of such a nature as to violate their obligations to the Corporations [*sic*]. The mere existence of a personal or business relationship will not in and of itself prove a violation of their duties to the Corporation."

The district court also found:

"The plaintiffs in this matter have failed to present to the court a prima facie case sufficient to require the defendant to rebut the allegation. Further, the totality of the evidence presented has failed to show to the court that it is more probably true than not true that any damages were caused to the defendants by the neglect, willful or otherwise, of the defendant in his duties owed to the Corporation in the supervision of the ditch [rider] or any private use of the ditch [rider] on Corporation time."

The Court of Appeals considered "whether Knoll met his burden of rebutting the Beckers' prima facie case." 40 Kan. App. 2d at 1056. The Court of Appeals then considered the evidence introduced by both parties and determined that there was evidence supporting the district court conclusion that the plaintiffs had failed to prove their case. To find otherwise, the Court of Appeals reasoned, would require it to reweigh the evidence. 40 Kan. App. 2d at 1057-58.

Two flaws appear in the Court of Appeals rationale. First, the district court did not analyze whether Knoll had proved good faith; rather, it analyzed whether the plaintiffs had proved damages re-

sulting from self-serving conduct. The shift in the burden of proof could change the conclusion reached by the factfinder. Knoll was required to keep employment records for Morehouse; he failed to do so. Instead of the plaintiffs having to prove that damages occurred because Morehouse was working privately for Knoll, Knoll should have had to prove by clear and satisfactory evidence that his private use of Morehouse did not interfere with his performance in overseeing the irrigation system.

The district court specifically found: "Although no records were kept or required of [Morehouse's] working hours there was no evidence presented to indicate that Morehouse did not work his required hours at all times." Under a proper application of the burden of proof, the plaintiffs would not be required to show that Morehouse did not work his required hours; rather, Knoll would be required to present evidence showing that Morehouse actually worked his required hours.

As an aside, we note that counsel for Knoll informed the court that the record-keeping requirement applied only to work performed during corporate-employment hours. A review of the minutes of the December 8, 2001, meeting indicates otherwise. If, as Knoll maintains, there were no fixed employment hours for the ditch rider, then it would be impossible in any event to determine which hours Morehouse worked for Knoll on corporate time.

The second problem with the opinion below is that the Court of Appeals applied a substantial competent evidence standard to reviewing the district court factual conclusions. While it is true that the record contained evidence supporting the factual findings by the district court, those findings were made in the context of the wrong burden of proof. The Court of Appeals should have applied a de novo standard to review whether the district court properly applied the law—the shifted burden of proof—to the facts. See *Owen Lumber Co. v. Chartrand*, 283 Kan. 911, 915-16, 157 P.3d 1109 (2007) (appellate review of district court application of law to facts is unlimited).

The Court of Appeals noted that the district court "found no credible evidence of *wrongful* self-dealing by Knoll." (Emphasis added.) 40 Kan. App. 2d at 1057. This language suggests that the

plaintiffs were required not only to make a prima facie case of self-dealing but were also required to prove that the self-dealing was wrongful before the burden shifted to the defendant. Such a conclusion is incorrect and illustrates the problems with the decisions that led to this review.

The standards applied in both the courts below were erroneous. The judgment of the Court of Appeals affirming the district court is affirmed in part and reversed in part. The judgment of the district court is reversed and the case is remanded to the district court with instructions to reconsider its findings of fact and conclusions of law in light of the properly allocated burden of proof.

DAVIS, C.J., not participating.
MICHAEL F. POWERS, District Judge, assigned.