NOT DESIGNATED FOR PUBLICATION

No. 129,066

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

KENDALL E. SCHEER, Minority Member of Scheer Farms, LLC,
*Appellant*,

v.

SCHEER FARMS, LLC, a Kansas Limited Liability Company,
BRICK SCHEER and TIBB SCHEER, in Their Capacity as
Co-Manager Members of Scheer Farms, LLC,
*Appellees*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; MICHAEL E. WARD, judge. Submitted without oral argument. Opinion filed June 5, 2026. Affirmed.

*Kendall E. Scheer*, appellant pro se.

*Benjamin K. Carmichael*, of Morris Laing Law Firm, of Wichita, for appellees.

Before HILL, P.J., PICKERING and BOLTON FLEMING, JJ.

HILL, J.:  Three brothers, who own a Limited Liability Company known as Scheer Farms, LLC, disagreed about the LLC's sales of some farm ground. Two were in favor of the sales, one was not. The brother who objected to the sales sued and lost when the district court, relying on the business judgment rule, granted summary judgment and approved the LLC's sales of the real estate. The losing brother appeals, contending that the district court improperly granted summary judgment to the LLC. It did not err.

1

*How the LLC is managed controls the outcome of this dispute.*

Scheer Farms, LLC, was organized in 2013 and operates as a manager-managed limited liability company. The operating agreement governing the LLC states that the business purpose of the LLC "is to hold and manage agricultural land, and to engage in any other business or activity in which a limited liability company may legally engage under Kansas law." Article 5 of the operating agreement provides the LLC's management structure. It requires that a manager be appointed for daily operations but limits the manager's authority to trade, sell, transfer, or otherwise dispose of any assets of the company by requiring consent or approval of the majority in interest.

This appeal involves a dispute between Kendall E. Scheer, a minority member of Scheer Farms, LLC, and his two brothers, Brick Scheer and Tibb Scheer—co-managers of the LLC. Kendall alleges that his two brothers, in their capacity as co-managers, breached their fiduciary duties and their implied duty of good faith and fair dealing when they made two proposed sales of the LLC's real property.

Co-managers Brick and Tibb each hold a 10 percent interest in the LLC. Kendall also had a 10 percent interest but negotiated with two other minority members for their respective 10 percent interest in the LLC, resulting in Kendall now owning a 30 percent interest.

The co-managers negotiated two sales for the LLC's real property with two prospective buyers. Under the operating agreement, a proposed sale may not be finalized without a meeting of the LLC's members and a majority vote for the sale. Such a meeting took place, in which all membership interest holders attended, and the proposed sales passed with a 60 percent vote. Kendall was present at this meeting and voted against the proposed sales.

*Outvoted, Kendall tries to prevent the sales.*

Kendall sued and moved for a temporary restraining order barring the proposed sales. He contended that the co-managers were using outdated appraisals in the sales, which meant that the sales would result in a $147,000 loss. That loss would unfairly diminish his interest. He alleged that the sales would cause him an irreparable harm and he would be unable to be redressed with monetary damages alone. And Kendall claimed that granting the temporary restraining order preserved the status quo and would protect minority shareholder rights. This result would align with public policy favoring fairness and equitable treatment within business entities.

Kendall asserted that the co-managers breached their fiduciary duty under K.S.A. 17-76,134(e) by acting in bad faith and without loyalty to Scheer as a minority owner. He asked the court to issue a temporary restraining order, hold a prompt hearing on his request for a preliminary injunction, and treat the matter as an emergency. The court denied Scheer's request.

Brick and Tibb moved to join Scheer Farms LLC as a party to the lawsuit, which the district court granted. Later, the LLC moved for summary judgment, arguing that Kendall's allegations were insufficient to rebut the business judgment rule. Kendall proceeded to file several pleadings, which the district court found did not meet the rules for opposing a motion for summary judgment under Supreme Court Rule 141 (2026 Kan. S. Ct. R. at 220).

After considering the motion, the parties' arguments, and the record, the district court granted summary judgment for the LLC. The court found that the two proposed sales were protected by the business judgment rule. It further found that Kendall presented no evidence of self-dealing or self-interest and thus had failed to satisfy his burden to rebut the rule.

*We must review this district court's grant of summary judgment.*

Summary judgment may be granted when a court finds the record shows that no genuine issue as to any material fact exists "and the moving party is entitled to judgment as a matter of law. The district court must resolve all facts and reasonable inferences drawn from the evidence in favor of the party against whom the ruling is sought." *GFTLenexa, LLC v. City of Lenexa*, 310 Kan. 976, 981-82, 453 P.3d 304 (2019). The opposing party must produce evidence to establish that a dispute as to a material fact exists. To escape summary judgment, "the facts subject to the dispute must be material to the conclusive issue in the case." 310 Kan. at 982. "Mere speculation" or "hope that something may develop later during discovery or at trial" is "insufficient to avoid summary judgment." *Geer v. Eby*, 309 Kan. 182, 190, 432 P.3d 1001 (2019).

On appeal, a reviewing court applies the same rules as the district court: If the court finds that reasonable minds could differ as to the conclusions drawn from the evidence, then reversal of the summary judgment is proper. An appellate court's "review of the legal effect of undisputed facts is de novo." *GFTLenexa, LLC*, 310 Kan. at 982.

*Officers of corporations must obey strict fiduciary duties to stockholders.*

"'Kansas imposes a very strict fiduciary duty on officers and directors of a corporation to act in the best interests of the corporation and its stockholders.'" *Burcham v. Unison Bancorp, Inc.*, 276 Kan. 393, 416, 77 P.3d 130 (2003). The party alleging a breach of a fiduciary duty bears the burden of establishing a prima facie case of the breach. See *Becker v. Knoll*, 291 Kan. 204, 207, 239 P.3d 830 (2010). Under this rule, Scheer has the burden to show the breach of fiduciary duty.

Our rules of corporate governance are well established and establish a priority. "'The duty of loyalty requires that the best interests of the corporation and its

4

shareholders take precedence over any self-interest of a director, officer, or controlling shareholder that is not shared by the stockholders generally. [Citations omitted.]' *McCall v. Scott*, 239 F.3d 808, 824 (6th Cir. 2001)." *Becker*, 291 Kan. at 208. This priority of interests supports the business judgment rule.

The business judgment rule presumes that, "in making business decisions not involving direct self-interest or self-dealing, corporate directors act on an informed basis, in good faith, and in the honest belief that their actions are in the corporation's best interest." 291 Kan. at 208-09. Application of the rule has significant consequences:

> "The business judgment rule 'shield[s] internal business decisions from second-guessing by the courts. . . . Under the rule, when business judgments are made in good faith based on reasonable business knowledge, the decision makers are immune from liability from actions brought by others who have an interest in the business entity.' [Citations omitted.]" 291 Kan. at 209.

We are mindful that the business judgment rule is a rebuttable presumption, placing "an initial burden on the party challenging a corporate decision to demonstrate the decisionmaker's 'self-dealing or other disabling factor.'" 291 Kan. at 209. Self-dealing in a corporate context means "'[p]articipation in a transaction that benefits oneself instead of another who is owed a fiduciary duty.'" 291 Kan. at 210. Self-interest or self-dealing can be proven by showing that the directors "'"appear on both sides of a transaction . . . or expect to derive any personal financial benefit from it in the sense of self-dealing, as opposed to a benefit which devolves upon the corporation or all stockholders generally." [Citation omitted.]' *Matter of Seidman*, 37 F.3d 911, 934 (3d Cir. 1994)." *Becker*, 291 Kan. at 209.

Finally, nearly every contract infers a duty of good faith and fair dealing. That implied duty ensures that both parties to a contract will not intentionally undermine the other party's performance under the contract. *Waste Connections of Kansas, Inc. v.*

5

*Ritchie Corp.*, 296 Kan. 943, 965, 298 P.3d 250 (2013). Sharp dealing and hidden terms are not permitted or tolerated in Kansas contracts. See 296 Kan. at 963 ("In general, parties may contract to any terms so long as they are neither illegal nor contrary to public policy.").

*Summary judgment was proper as we see no evidence of self-interest or self-dealing in this record.*

Scheer attacks summary judgment in this appeal on two fronts: (1) The co-managers breached their implied duty of good faith and fair dealing, and (2) the co-managers breached their fiduciary duties of care and loyalty.

Both attacks fail to overcome the presumption made by the business judgment rule. That rule establishes a presumption that business judgments not involving self-interest or self-dealing are undertaken with good-faith, and in the honest belief that the decisions are in the corporation's best interest. *Becker*, 291 Kan. at 209.

Simply put, Scheer has not shown that either of the LLC's co-managers engaged in self-dealing or self-interest. First, the co-managers sought the requisite approval by a majority of the LLC's members at a meeting where Kendall was present, had a vote, and voiced his objections. Second, the co-managers each owned a 10 percent interest in the LLC and would share in the sales' proceeds on the same pro rata basis as Kendall. No one director stood to benefit in any manner different from the other members.

Third, Kendall's claims that the sales were not at arm's length lack merit because he has offered no admissible evidence supporting his claim. Words alone do not rebut the business judgment rule, nor does he show any questionable relationship between the co-managers and the two parties on the other end of the two sales.

Fourth, Kendall's claim regarding the "right of first refusal," that right applied solely to members transferring their respective membership interests and did not apply to allow members to have the right of first refusal to any proposed sale of the LLC. As the LLC asserts, even if such a right existed under the operating agreement, the majority vote would have overridden that right absent a conflict of interest or self-dealing.

Kendall's remaining arguments are defeated by the business judgment rule because he fails to establish any showing of self-interest or self-dealing by the co-managers in the two proposed sales.

With no evidence that the LLC engaged in self-dealing or self-interest in the two real estate deals, the business judgment rule presumes that the sales were undertaken with good faith and in honest belief the decisions were in the LLC's best interest. See *Becker*, 291 Kan. at 208. Thus, we must affirm the district court's grant of summary judgment for the LLC.

*We see no denial of due process by the district court.*

Kendall also raises claims involving the denial of his due process rights. He alleges that his due process rights were violated when his emergency request for a temporary restraining order was not timely docketed and that his motion for deep discovery was misfiled and unheard. To his first allegation, Kendall failed to timely appeal the district court's denial of his temporary restraining order request; therefore, that issue is not properly before this court.

To the second allegation, Kendall's motion for deep discovery was filed before the LLC's motion to stay discovery pending the disposition of the summary judgment motion. The district court granted the stay and subsequently granted summary judgment for the LLC. Therefore, the district court did not deny Kendall's due process rights

because the matter of discovery was heard by the district court and Kendall had an opportunity to be heard. Kendall's due process claims lack merit.

*The district court appropriately granted summary judgment.*

Neither of Kendall's claims prevails, nor do they rebut the business judgment rule. He failed to show that the proposed sales of the real property involved a conflict of interest or that the transactions benefited one member more than others. He had the opportunity to object to the sale at the meeting where 60 percent of the members consented to the sale—above the required vote under the operating agreement. The sale benefited all members equally and respected all of the different membership interests, meaning no one member or manager would benefit in any manner different than the other members or managers.

Affirmed.

\* \* \*

PICKERING, J., concurring: I concur with affirming the district court's ruling. I would, however, address the appellant's use of several fake case citations in his brief.

An appellate brief containing nonexistent case citations or fake legal authority needlessly undermines the validity of a party's arguments. *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 448-49 (S.D.N.Y. 2023). Here, the appellant's brief—as noted by the appellee—contains several fake case citations in support of his arguments. It is unclear whether the fake cases were the result of fabrications on the part of artificial intelligence. See *United States v. Hayes*, 763 F. Supp. 3d 1054, 1064-65 (E.D. Cal. 2025) (describing characteristics of "hallucinated case" citations generated by artificial intelligence). Regardless, we should disregard any of the appellant's arguments supported by

8

nonexistent cases because "[a] fake opinion is not 'existing law' and citation to a fake opinion does not provide a non-frivolous ground for extending, modifying, or reversing existing law, or for establishing new law." *Mata*, 678 F. Supp. 3d at 461. Failure to support a point with pertinent authority—or, as here, use of fake cases to support an argument—is akin to failing to brief an issue. "'Where the appellant fails to brief an issue, that issue is waived or abandoned.'" *Mid-Continent Specialists, Inc. v. Cap. Homes, L.C.,* 279 Kan. 178, 191, 106 P.3d 483 (2005).

Additionally, Scheer's status as a self-represented litigant does not rid him of the duty to confirm the validity of any cited legal authority. K.S.A. 60-211(b)(2) states:

> "(b) . . . By presenting to the court a pleading, written motion or other paper, whether by signing, filing, submitting or later advocating it, an attorney *or unrepresented party* certifies that to the best of the person's knowledge, information and belief formed after an inquiry reasonable under the circumstances:
>
> . . . .
>
> (2) the claims, defenses and other legal contentions *are warranted by existing law* or by a nonfrivolous argument for extending, modifying or reversing existing law or for establishing new law." (Emphases added.)

Simply stated, the use of nonexistent cases with fake quotes and citations—regardless if a party is a self-represented litigant—is not allowed in either legal filings or arguments made to the courts. To do otherwise "'degrades or impugns the integrity of the Court [and] interferes with the administration of justice.'" *Hayes*, 763 F. Supp. 3d at 1064. Moreover, "[a]n attempt to persuade a court or oppose an adversary by relying on fake opinions is an abuse of the adversary system." *Mata*, 678 F. Supp. 3d at 461. On this basis, I would affirm the district court's ruling due to appellant's attempt to support his argument with nonexistent cases.

9