No. 127,030

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DANIEL NEUMAN,
*Appellee*,

v.

ANESTHESIA ASSOCIATES OF KANSAS CITY, P.A.,
*Appellant*.

SYLLABUS BY THE COURT

1.

The Kansas Public Speech Protection Act (KPSPA), K.S.A. 2024 Supp. 60-5320, is commonly known as an anti-SLAPP statute, or anti-strategic lawsuit against public participation statute, and is intended to prevent or cease frivolous lawsuits that have a chilling effect on First Amendment rights.

2.

The KPSPA protects a party's exercise of their First Amendment rights by preventing frivolous lawsuits that impede a party's exercise of their right of free speech, right to petition, or right of association.

3.

Under the KPSPA, a party may end harassing litigation early through a motion to strike if the claim to be stricken is based on, relates to, or is in response to the party's exercise of its right of free speech, right to petition, or right of association.

1

4.

The KPSPA provides a two-step process for establishing a motion to strike. First, the moving party must establish a prima facie case showing the claim to be stricken concerns a party's exercise of its right of free speech, right to petition, or right of association. If the moving party satisfies the first step, the burden shifts to the responding party to establish a likelihood of prevailing on the claim by presenting substantial competent evidence to support a prima facie case.

5.

The first step in establishing a right to strike a claim under the KPSPA is a low burden, requiring sufficient evidence to find the claim is based on or relates to the moving party's exercise of its right of free speech, right to petition, or right of association—even if other evidence may later contradict or undermine the initial showing. The moving party need not demonstrate a successful defense or otherwise establish a likelihood of defeating the claim.

6.

A party seeking to strike a claim under the KPSPA is not required to show ill intent or malice or otherwise address the motives for the statement underlying the claim.

7.

Appellate courts exercise unlimited review of a district court's decision to grant or deny a motion to strike a claim under the KPSPA.

8.

When a party moves to strike a defamation claim under the KPSPA, courts must review the content and context of the statement underlying the defamation claim to determine whether the statement is protected under the KPSPA. Not all speech is of equal

importance and thus subject to the same protection under the First Amendment and entitled to be stricken under the KPSPA.

9.

A claim may not be stricken under the KPSPA when it is "brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods, services . . . or a commercial transaction in which the intended audience is an actual or potential buyer or customer." K.S.A. 2024 Supp. 60-5320(h)(2). This is commonly referred to as the commercial speech exception.

10.

At the core of the KPSPA commercial speech exception is whether the statement underlying the plaintiff's claim arises from the sale or lease of goods or services or a commercial transaction as defined by the KPSPA. Courts must review the content and context of the statement to determine whether the KPSPA commercial speech exception applies.

Appeal from Johnson District Court; JAMES F. VANO, judge. Oral argument held September 17, 2024. Opinion filed August 1, 2025. Affirmed.

*Casey P. Murray*, *Douglas M. Weems*, and *Amanda L. Lewandowski*, of Spencer Fane LLP, of Kansas City, Missouri, for appellant.

*Stephen M. Bledsoe*, *Anthony J. Durone*, *Megan D. Costello*, and *Braden A. Lefler*, of Berkowitz Oliver LLP, of Kansas City, Missouri, for appellee.

Before HURST, P.J., ISHERWOOD and PICKERING, JJ.

3

HURST, J.:  Dr. Daniel Neuman sued his former employer, Anesthesia Associates of Kansas City, P.A. (AAKC), asserting among other causes of action a defamation claim based on AAKC's statements about the circumstances of Dr. Neuman's departure from his employment. AAKC moved to strike Dr. Neuman's defamation claim under the Kansas Public Speech Protection Act (KPSPA), K.S.A. 2024 Supp. 60-5320, alleging the claim was based on AAKC's exercise of its right of free speech as defined by the statute.

The district court denied the motion for three independently sufficient reasons:  (1) AAKC's allegedly defamatory statements were not made in connection with an issue of public interest; (2) Dr. Neuman's defamation claim fell within the KPSPA commercial speech exception; and (3) Dr. Neuman established a likelihood of prevailing on his defamation claim by presenting substantial competent evidence to support a prima facie case. AAKC appeals the district court's denial of its motion to strike Dr. Neuman's defamation claim.

This court agrees that AAKC's allegedly defamatory statements are not protected speech under the KPSPA as they were not made in connection with an issue of public interest and were commercial speech. Given that AAKC's allegedly defamatory communications are not entitled to protection under the KPSPA, this court need not evaluate whether Dr. Neuman established a likelihood of prevailing on his defamation claim. Finding no error in the district court's denial of AAKC's motion to strike Dr. Neuman's defamation claim, this court affirms the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Dr. Neuman is a pain medicine physician and anesthesiologist who, while completing a postresidency fellowship, began discussions with AAKC to join their practice. In February 2022, AAKC sent Dr. Neuman an offer of employment that included agreed-upon terms which Dr. Neuman signed and returned. In July 2022,

AAKC sent Dr. Neuman a proposed employment agreement which Dr. Neuman executed and returned. Dr. Neuman began working for AAKC in September 2022, as agreed by the parties.

The parties eventually developed a dispute regarding the terms of Dr. Neuman's employment agreement and the compensation to which Dr. Neuman believed he was entitled. The parties were unable to resolve the dispute, and AAKC therefore terminated Dr. Neuman's employment less than five months after he started working there. Dr. Neuman had appointments scheduled with several patients after the date his employment terminated, so AAKC sent the following message to those patients:

> "Hello [patient name] we wanted to let you know [that] Dr. Neuman is no longer with KC Pain Centers due to some personal issues. We will reach out in the next week or so to work with you to find your new pain management doctor at KC Pain Centers. We look forward to continuing to work with you."

Dr. Neuman eventually filed a lawsuit against AAKC in which he asserted, among other causes of action, a defamation claim based on AAKC's statements about the circumstances of his departure from the business. Dr. Neuman ultimately alleged that "AAKC made false and defamatory statements about Dr. Neuman to third parties by sending text and e-mail messages stating Dr. Neuman had left AAKC because of 'personal issues' or 'personal reasons.'" Dr. Neuman specifically alleged:

> "30.     In the weeks following his termination, Dr. Neuman learned from multiple individuals that AAKC was sending written messages to his patients and other industry professionals, as well as messaging to AAKC staff, falsely stating that Dr. Neuman had left AAKC due to 'personal issues.'
> "31.     This caused considerable concern regarding Dr. Neuman's well-being and ability to practice medicine, as the clear connotation of 'personal issues' is to insinuate that Dr. Neuman was battling some kind of issue that could compromise his ability to practice, such as a mental health, family, or substance abuse issue. Indeed,

5

many of the recipients of these plainly defamatory messages contacted Dr. Neuman to ask him what was wrong.

"32. At no time did Dr. Neuman tell AAKC that he wished to end his employment, or that he was suffering from any personal issues. Any such statements are a bald fabrication, intended to injure Dr. Neuman's reputation because he sought enforcement of the compensation terms of his Employment Agreement."

AAKC timely moved to strike Dr. Neuman's defamation claim under the KPSPA, alleging the claim was based on its exercise of its right of free speech as defined by the statute. AAKC argued Dr. Neuman's "claim of defamation should be stricken as the statement he claims to be defamatory constitutes AAKC's expression of free speech related to issues of the health and safety of its patients as well as services in the marketplace." AAKC further claimed its challenged statement "related both to the health and safety of its patients and the medical services it and Dr. Neuman provided to the public." According to AAKC, Dr. Neuman's "_own allegations_, taking them as true, admit that there was so much interest in AAKC's statement that patients began to reach out to him directly about it. . . . [T]his statement sent directly to AAKC's patients about their healthcare (a matter of public interest) should be protected." AAKC further stated "the ultimate purpose of the speech was to inform patients about a change in their healthcare."

AAKC also argued its challenged statements constituted free speech because they "related to a 'service in the marketplace.'" AAKC claimed its "statement was made to its patients, consumers of it and Dr. Neuman's medical services, about the unavailability of such services moving forward, and that it would be reaching out to discuss the other medical services that it had to provide, in the form of other doctors." Finally, AAKC argued Dr. Neuman would not be able to show a likelihood he would prevail on the merits of his defamation claim because "AAKC's statement was true" and "there is unlikely to be legitimate evidence that the statement harmed [Dr.] Neuman's reputation or caused him actual damages."

6

Dr. Neuman filed a memorandum in opposition to AAKC's motion to strike his defamation claim, arguing AAKC's statements were merely "commercial speech designed to smear what it perceived to be a potential competitor." Dr. Neuman also expanded on his allegations of defamation, claiming AAKC's statement that he left the practice for personal reasons was coded language implying he had substance abuse issues. Dr. Neuman further asserted AAKC's allegedly defamatory statements were also made to AAKC staff and "other industry professionals" and alleged he received calls from two patients asking if he was "dealing with a substance abuse problem." Dr. Neuman also claimed industry vendors reached out to ask if he was doing okay, "believing that something was wrong with [him] such that [he] could no longer practice medicine" after being told he left AAKC for personal reasons.

Dr. Neuman also attached exhibits to his memorandum showing an example of the message AAKC sent to patients (recited in full above) and an email ostensibly from an AAKC staff member to a sales manager, in which she stated: "Both of these appts have been cancelled for next Tuesday. Dr. Neuman as of this morning, is [no] longer with KC Pain due to personal reasons. I have notified patient. I am getting with Management on Monday about r/s. I will keep you posted." Dr. Neuman alleged AAKC knew "that using a charged phrase like 'personal reasons' would lead those in our field . . . to assume incorrectly that [he] was dealing with a serious personal issue such as substance abuse."

In July 2023, the district court conducted a hearing on AAKC's motion to strike Dr. Neuman's defamation claim under the KPSPA, at which both parties presented argument. The district court ultimately denied AAKC's motion to strike, reasoning its allegedly defamatory statements were not protected under the KPSPA. The district court also concluded AAKC's statement fell within the KPSPA's exception for commercial speech. In its subsequent journal entry, the district court further explained its reasoning in denying the motion:

7

"The District Court held that AAKC failed to carry its burden that the speech at issue was protected by the [KPSPA], as it was not made in connection with a public issue or issue of public interest as those terms are defined in the [KPSPA]. The District Court further held that even if AAKC's speech was covered by the [KPSPA], the speech would be excluded from protection under the [KPSPA], pursuant to Kansas' commercial speech exception set forth in K.S.A. 60-5320(h) because Neuman's claim is brought against a person primarily engaged in the business of selling services, the statement arose out of AAKC's sale of services, and AAKC's intended audience was an actual or potential customer. Finally, the District Court held that even if the speech had qualified for protection under the [KPSPA], Neuman carried his burden of establishing a likelihood of success on his defamation claim by presenting substantial competent evidence to support a prima facie case."

AAKC filed a timely interlocutory appeal. See K.S.A. 2024 Supp. 60-5320(f)(2) ("The movant in a motion to strike has the right to . . . file an interlocutory appeal from a trial court order denying the motion to strike, if notice of appeal is filed within 14 days after entry of such order.").

## DISCUSSION

The only issue on appeal is whether the district court erred in denying AAKC's motion to strike Dr. Neuman's defamation claim under the KPSPA. The KPSPA is commonly known as an anti-SLAPP statute, or anti-strategic lawsuits against public participation statute, and is intended to prevent or cease frivolous lawsuits that have a chilling effect on First Amendment rights. *Caranchini v. Peck*, 355 F. Supp. 3d 1052, 1055 (D. Kan. 2018); *Farmland Partners, Inc. v. Fortunae*, 842 Fed. Appx. 199, 200 (10th Cir. 2021) (unpublished opinion) (reviewing the Texas anti-SLAPP statute); see Weslander, *The First Amendment Slapps Back: An Overview of the Free-Speech Protections of Kansas' New Anti-SLAPP Statute*, 87 J.K.B.A. 30, 31 (January 2018). In support of its purpose to prevent frivolous lawsuits, the KPSPA permits litigants to move to strike claims that impede a party's public participation through free expression and thus

protect a party's First Amendment rights. See K.S.A. 2024 Supp. 60-5320(c)(8), (d). The motion to strike helps effectuate the KPSPA's purpose by ending litigation of impermissible claims at an earlier stage than other procedural mechanisms.

The Legislature enacted the KPSPA "to encourage and safeguard the constitutional rights of a person to petition, and speak freely and associate freely, in connection with a public issue or issue of public interest to the maximum extent permitted by law," but that shelter is not impervious. K.S.A. 2024 Supp. 60-5320(b). The KPSPA safeguards speech while simultaneously "protecting the rights of a person to file meritorious lawsuits for demonstrable injury." K.S.A. 2024 Supp. 60-5320(b). The KPSPA is to be "applied and construed liberally to effectuate its general purposes." K.S.A. 2024 Supp. 60-5320(k).

While the Kansas Supreme Court has yet to consider the appropriate appellate standard of review over a district court's decision on a motion to strike under the KPSPA, as previous panels of this court have concluded, this court should review such a decision de novo. See *Kansas Governmental Ethics Commission v. Shepard*, 65 Kan. App. 2d 1, 6, 556 P.3d 890 (2024) ("This court exercises unlimited review of a district court's order granting or denying a motion to strike under the [KPSPA]."); *Doe v. Kansas State University*, 61 Kan. App. 2d 128, 136-37, 499 P.3d 1136 (2021). Like appellate review of a district court's summary judgment decision, this court reviews the district court's decision on a motion to strike anew to determine whether the pleadings and supporting and opposing affidavits show that the moving party established the standard to strike a claim under the KPSPA. See K.S.A. 2024 Supp. 60-5320(d) (setting forth the standard for striking a claim under the KPSPA); see also *Unruh v. City of Wichita*, 318 Kan. 12, 19, 540 P.3d 1002 (2024) (explaining appellate review of the district court's summary judgment determination). Additionally, to the extent resolution of this claim requires interpretation of the KPSPA, this court likewise exercises unlimited review. *H.B. v. M.J.*, 315 Kan. 310, 320, 508 P.3d 368 (2022).

9

Under the KPSPA, "[a] party may bring a motion to strike the claim if a claim is based on, relates to or is in response to a party's exercise of the right of free speech, right to petition or right of association." K.S.A. 2024 Supp. 60-5320(d). The KPSPA provides a two-step process for evaluating a motion to strike. First, the moving party must establish a "prima facie case showing the claim against which the motion is based concerns a party's exercise of the right of free speech, right to petition or right of association." K.S.A. 2024 Supp. 60-5320(d). If the party seeking to strike the claim successfully carries their burden in step one, the court moves to step two in which the party opposing the motion to strike must "establish a likelihood of prevailing on the claim by presenting substantial competent evidence to support a prima facie case." K.S.A. 2024 Supp. 60-5320(d). In determining whether to grant such a motion, the district court considers "pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based" and, upon a showing of good cause, the court may allow "specified and limited discovery relevant to the motion." K.S.A. 2024 Supp. 60-5320(d), (e)(1).

Considering the Legislature's direction to liberally construe the KPSPA to effectuate its purpose to protect a party's First Amendment rights, the first step to establish a prima facie case supporting a motion to strike is a low burden. In this step, the party seeking to strike a claim is merely required to show there is sufficient evidence to find that the claim is based on or relates to the party's exercise of their First Amendment rights of free speech, right to petition, or right of association—even if other evidence may be presented later that contradicts or undermines the initial showing. See *Becker v. Knoll*, 291 Kan. 204, 206, 239 P.3d 830 (2010) (prima facie evidence is evidence sufficient to sustain a verdict in favor of the issue it supports, even though it may be contradicted by other evidence). Step one does not require discovery or any explanation or evidence related to the facts supporting or refuting the claim. See, e.g., *Zaid v. Boyd*, No. 22-1089-

EFM, 2022 WL 4534633, at *6 (D. Kan. 2022) (unpublished opinion) ("Kansas courts construing the KPSPA have held that this determination is based solely on the contents of the plaintiff's claims."). This means that a party seeking to strike a claim under the KPSPA need not demonstrate they have successful defenses to the claims or a likelihood of victory.

Here, AAKC's First Amendment right at issue is its freedom of speech, not its right to petition or associate. Therefore—in evaluating the district court's decision about AAKC's motion to strike—this court must determine whether Dr. Neuman's claim "is based on, relates to or is in response to [AAKC]'s exercise of the right of free speech." K.S.A. 2024 Supp. 60-5320(d). The KPSPA defines the "'[e]xercise of the right of free speech'" as "a communication made in connection with a public issue or issue of public interest." K.S.A. 2024 Supp. 60-5320(c)(4). The statute in turn defines "'[p]ublic issue or issue of public interest'" as "an issue related to":

"(A) Health or safety;
"(B) environmental, economic or community well-being;
"(C) the government;
"(D) a public official or public figure; or
"(E) a good, product or service in the marketplace." K.S.A. 2024 Supp. 60-5320(c)(7).

With these definitions in hand, AAKC must only show that the claim it seeks to strike concerns its *communication* made in connection with an issue related to health or safety; environmental, economic, or community well-being; the government; a public official or figure; or a good, product or service in the marketplace. AAKC is not required to show or refute ill intent, malice, or otherwise address the motives for the communication. They merely need to show its communication "concerns a party's exercise of the right of free speech" as described in the statute. K.S.A. 2024 Supp. 60-5320(d).

11

If a party seeking to strike a claim under the KPSPA satisfies their burden in step one, the burden shifts to the party opposing the motion to "establish a likelihood of prevailing on the claim." K.S.A. 2024 Supp. 60-5320(d). The KPSPA also includes an additional barrier to its application before this burden shift occurs. The KPSPA has several exceptions under which its protections do not apply—and the opposing party can assert that one of these exceptions applies to permit its claims to proceed. Relevant to this appeal a claim cannot be stricken using the KPSPA protections if the statement underlying that claim arose out of commercial transactions. This is commonly referred to as the commercial speech exception. Specifically, a party "primarily engaged in the business of selling or leasing goods or services" may not use the KPSPA to strike a claim

> "if the statement or conduct arises out of the sale or lease of goods, services or an insurance product, insurance services or a commercial transaction in which the intended audience is an actual or potential buyer or customer, except as provided in subsection (i)." K.S.A. 2024 Supp. 60-5320(h)(2).

Therefore, if AAKC's statement about Dr. Neuman's departure arose from the sale or lease of goods or services to an actual or potential customer, the KPSPA commercial speech exception applies and does not protect AAKC from Dr. Neuman's defamation claim based on that statement.

a. *AAKC failed to establish that Dr. Neuman's defamation claim is based on or related to AAKC's exercise of its right of free speech as defined by the KPSPA.*

Dr. Neuman's defamation claim is primarily based on AAKC's message to patients that said "Dr. Neuman is no longer with KC Pain Centers *due to some personal issues*. We will reach out in the next week or so to work with you to find your new pain management doctor at KC Pain Centers. We look forward to continuing to work with you." (Emphasis added.) Dr. Neuman alleges that AAKC's statement to third parties was

12

false and defamatory because it insinuated he had a *personal issue* making him unfit to practice medicine such as addiction or substance abuse, thereby damaging his reputation. Dr. Neuman contends that the ubiquitous concerns about substance abuse within the pain management healthcare industry makes AAKC's use of *personal issues* to describe the reason for his departure particularly damaging.

AAKC argues that Dr. Neuman's characterization of his defamation claim demonstrates its protected status under the KPSPA. According to AAKC, because Dr. Neuman's defamation claim alleges that AAKC's statement damaged his reputation by implying he suffered from an addiction or abused drugs then the statement must concern the public interest related to "[h]ealth or safety" and a "good, product or service in the marketplace." K.S.A. 2024 Supp. 60-5320(c)(7)(A), (c)(7)(E). While AAKC's defense against Dr. Neuman's claim asserts just the opposite—that the communication did not imply anything related to addiction or drug abuse—AAKC contends those defenses are irrelevant to determining whether Dr. Neuman's defamation claim concerns AAKC's exercise of the right of free speech and thus satisfies the first step in a motion to strike under the KPSPA. AAKC's argument unconvincingly relies on an opinion from a panel of this court that explained "whether a party may properly bring a motion to strike turns solely on the contents of the plaintiff's claims. . . . Put simply, step one of the analysis . . . only concerns the content of the claims." *Taylor*, 2017 WL 6546634, at *5. AAKC's reliance on *Taylor* is misplaced, as its distinguishable facts make the cited passage inapplicable here.

In *Taylor,* the plaintiff filed defamation and tortious interference claims against the defendant, alleging that after the end of their romantic relationship the defendant assumed a faux online identity and created emails and blog posts maligning the plaintiff. 2017 WL 6546634, at *1. The defendant moved to strike under the KPSPA, arguing the plaintiff's claims implicated the defendant's right to engage in free speech on a public issue. 2017 WL 6546634, at *1. Importantly—and distinct from this case—the defendant also denied

creating or authoring the malignant emails and blog posts. 2017 WL 6546634, at *1. The district court denied the defendant's motion to strike, reasoning the defendant could not simultaneously deny making the statements but nevertheless claim protection for those statements under the KPSPA. 2017 WL 6546634, at *2. Specifically, the district court focused on the portion of the statute that "'requires a defendant to *actually exercise* [their] right of free speech'" and found that because the defendant denied making the alleged defamatory comments, they could not also be protected by the KPSPA. 2017 WL 6546634, at *2.

On appeal, a panel of this court disagreed with the district court's decision to deny the motion to strike "*solely* on the reason that [the defendant] denied making some of the communications in question." (Emphasis added.) *Taylor*, 2017 WL 6546634, at *6. The appellate court noted that "the district court never completed the first step in the analysis by determining whether the claim . . . concerned a protected right under the statute." 2017 WL 6546634, at *4. It was in that context where the appellate court explained that whether the defendant "admits or denies the allegations is not relevant regarding step-one analysis because the district court should only consider the contents of the claims in the petition." 2017 WL 6546634, at *5.

First, AAKC creates a false equivalence between this case and *Taylor* because in *Taylor* the court never determined whether the statements were protected under the KPSPA, but simply denied the motion to strike based solely on the defendant's denial that they made the statements. That is not what occurred here. The district court completed step one and found AAKC's *communication* was not protected speech under the KPSPA. Second, AAKC erroneously argues that the district court is prohibited from considering the content and context of the actual speech or communication at issue in determining whether a claim based on that statement may be stricken under the KPSPA. Once again, AAKC cites to cases that do not support its argument. See *Trump v. Trump*, 79 Misc. 3d 866, 189 N.Y.S.3d 430 (N.Y. Sup. Ct. 2023); *Yang v. Tenet Healthcare Inc.*, 48 Cal. App.

14

5th 939, 262 Cal. Rptr. 3d 429 (Cal. Ct. App. 2020); *Caranchini v. Peck*, No. 4:19-CV-00030-DGK, 2019 WL 13258920 (W.D. Mo. 2019) (unpublished opinion). Courts are tasked with applying the law to the specific facts of each case, recognizing that outcomes differ depending on the unique facts of a case. Taking a court's statements out of context and applying them to distinguishable facts can produce a fallacious result inconsistent with the law.

In *Trump*, the court discussed and evaluated the communication at issue underlying the claims the defendant sought to strike, and the language AAKC relied on was merely a recitation of the general application of the statute. 79 Misc. 3d at 872-79. Additionally, in *Caranchini*, a Missouri federal court applying the KPSPA found the plaintiff's claim related to the right to petition after reviewing the conduct and communication underlying the claim. 2019 WL 13258920, at *2-4. In *Yang*, a case involving statements about a physician's ability to competently and safely practice medicine, the court found the statements were protected speech under the anti-SLAPP statute. 48 Cal. App. 5th at 945-51. Unlike here, the statements at issue were directly and intentionally related to the physician's ability to perform their job. The court explained that "'a court must consider the context as well as the content of a statement in determining whether that statement furthers the exercise of constitutional speech rights in connection with a matter of public interest.'" 48 Cal. App. 5th at 947 (quoting *FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133, 149, 439 P.3d 1156, 246 Cal. Rptr. 3d 591 [Cal. 2019]). This explanation undermines AAKC's argument—and is exactly what the court did in this case.

AAKC asserts that the district court was limited to considering Dr. Neuman's "claim" as he described AAKC's actions in the petition—meaning his argument that the contested communication wrongly implied he was unfit to practice medicine—and nothing else. AAKC appears to conflate two justifications in this argument. First, AAKC argues the court may not consider its defenses to Dr. Neuman's claim and, second, that

15

the court may not consider the content and context of the objected-to communication underlying Dr. Neuman's claim. The first issue is easily disposed of because the facts do not support AAKC's argument. The second not only contradicts the clear statutory language and its mandated liberal construction to effectuate the KPSPA's purpose, but is illogical because it would allow a savvy plaintiff to creatively draft a petition to avoid a motion to strike under the KPSPA.

The district court did not rely on AAKC's defenses for its decision to deny the motion to strike. Rather, it considered the content and context of AAKC's communication underlying Dr. Neuman's claim to determine that the communication was not protected speech under the KPSPA. While explaining its understanding of the KPSPA, the district court mentioned the context of the claim and what AAKC might argue as the case progresses, but none of the court's statements demonstrate it relied on those defenses or inaccurately applied the law. As to the allegedly defamatory communication, the court said it was "just not actually relating to medical safety" but rather was "a business issue" without getting into the specifics of AAKC's defenses. Unlike the district court in *Taylor*, here the court did not dismiss AAKC's motion to strike based solely on its defense but instead determined that the KPSPA did not protect AAKC from claims related to its communication about Dr. Neuman's departure.

When AAKC argues the district court can only look to the allegations of Dr. Neuman's claim, it contends that the district court cannot consider the content and context of the communication underlying that claim. This argument focuses on just one part of the KPSPA—while ignoring other parts—and demonstrates a fundamental misunderstanding of statutory interpretation. Rather than reading each part of a statute separately, courts must consider various provisions of a statute together or "*in pari materia* to reconcile and bring those provisions into workable harmony, if possible." *Roe v. Phillips County Hospital*, 317 Kan. 1, Syl. ¶ 3, 522 P.3d 277 (2023). "'[W]hen interpreting a statute, we do not consider isolated parts alone, but all relevant parts

16

together.'" 317 Kan. at 5-6 (quoting *Bruce v. Kelly*, 316 Kan. 218, 230, 514 P.3d 1007 [2022]).

The KPSPA's plain language contradicts AAKC's argument. For example, the KPSPA provides that the court—in determining whether a *claim* should be stricken—"shall consider pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based." K.S.A. 2024 Supp. 60-5320(d). The plain language directs courts to consider all the pleadings and any facts included in supporting affidavits—not just the petition as AAKC contends. This statutory provision undermines AAKC's argument that in step one of a motion to strike the court can only consider Dr. Neuman's claim as asserted or explained in his petition.

AAKC asserts that because the KPSPA says a claim may be stricken when "*a claim* is based on, relates to or is in response to a party's exercise of the right of free speech" the court must only rely on Dr. Neuman's description of his *claim*. (Emphasis added.) See K.S.A. 2024 Supp. 60-5320(d). In relying so heavily on the word *claim*, AAKC ignores the second part of the sentence that directs the court to consider whether Dr. Neuman's claim is based on AAKC's "*exercise of the right of free speech*, right to petition or right of association." (Emphasis added.) See K.S.A. 2024 Supp. 60-5320(d). The "'[e]xercise of the right of free speech'" is defined as "a *communication* made in connection with a public issue or issue of public interest." (Emphasis added.) K.S.A. 2024 Supp. 60-5320(c)(4). Thus, the court must analyze the content and context of the actual "communication" underlying the plaintiff's claim to determine whether it is "made in connection with a public issue or issue of public interest" to determine whether the plaintiff's claim may be stricken under the KPSPA. See K.S.A. 2024 Supp. 60-5320(c)(4), (d).

Dr. Neuman's defamation claim necessarily includes allegations related to AAKC's allegedly defamatory statement, and thus the court must determine whether the

17

content and context of AAKC's communication regarding Dr. Neuman's departure is a protected exercise of the right of free speech under the KPSPA. The underlying objected-to communication—not just the allegations surrounding the plaintiff's claim—dictates whether the plaintiff's claim may be stricken under the KPSPA.

This finding not only comports with the statutory language but logically flows from the KPSPA's purpose to "encourage and safeguard the constitutional rights of persons to petition, and speak freely and associate freely, *in connection with a public issue or issue of public interest*." (Emphasis added.) K.S.A. 2024 Supp. 60-5320(b). The KPSPA permits a party to move to strike a claim early to protect a party's right to express certain, specific speech identified in the statute. Whether a claim may be stricken under the KPSPA turns on whether the actual communication was an exercise of free speech or a right to petition or associate—not merely whether the plaintiff's claim alleges the communication should or could be interpreted in a particular way. If it turned only on the latter and the court did not consider the content and context of the allegedly defamatory communication, the analysis would fail to effectuate the KPSPA's purpose to protect particular speech.

The KPSPA protects a party from frivolous lawsuits that impede their protected First Amendment rights related to free speech, the right to petition, and the right of free association, but not all speech is equally important under the First Amendment. K.S.A. 2024 Supp. 60-5320(b); see *Snyder v. Phelps*, 562 U.S. 443, 452, 131 S. Ct. 1207, 179 L. Ed. 2d 172 (2011). "[R]estricting speech on purely private matters does not implicate the same constitutional concerns as limiting speech on matters of public interest." 562 U.S. at 452. While Dr. Neuman argues that the statement about his departure implied he was unfit to practice medicine, the content and context of the statement demonstrates that it was not related to a matter of public issue or public interest as defined under the KPSPA. Moreover, Dr. Neuman's claim is not subject to a motion to strike under the KPSPA

because AAKC's statement about his departure is commercial speech excluded from KPSPA protection.

b.   *The KPSPA commercial speech exception applies to AAKC's statement to patients regarding Dr. Neuman's departure.*

The KPSPA does not permit a party to strike claims that arise from specified types of commercial speech. "[The KPSPA] does not apply to . . . a claim brought against a person primarily engaged in the business of selling . . . services, *if the statement* . . . arises out of the sale . . . of . . . services . . . or a commercial transaction in which the intended audience is an actual or potential buyer or customer, except as provided in subsection (i)." (Emphasis added.) K.S.A. 2024 Supp. 60-5320(h)(2). Subsection (i)—which applies to "dramatic, literary, musical, political or artistic work, including, but not limited to, a motion picture or television program, or an article published in a newspaper or magazine of general circulation"—does not apply to this case. K.S.A. 2024 Supp. 60-5320(i). The district court found the commercial speech exception applied to AAKC's communication regarding Dr. Neuman's departure and thus could not be stricken under the KPSPA.

AAKC counters that its communication about Dr. Neuman's departure did not "[arise] out of the sale or lease of . . . services" because:  (1) Dr. Neuman's claim *alleges* the statements implied he was unfit to practice medicine; thus the statement addresses a public issue or issue of public interest, and (2) the statement was not used to solicit additional business because it was only sent to existing customers to reschedule preexisting appointments. Like its primary argument, AAKC contends the court must only look to Dr. Neuman's *claim* that the speech wrongly attacked his character by implying an unfitness to care for patients, rather than the content and context of the statements, to determine whether the exception applies. This argument is similarly unpersuasive to this exception.

19

At the core of the commercial speech exception is whether the *statement* underlying the plaintiff's claim—not the plaintiff's argument of how the statement harmed them—relates to or arises from the sale of services or a commercial transaction. See K.S.A. 2024 Supp. 60-5320(h)(2). Therefore, courts must review the content and context of the statement to determine whether it fits within the KPSPA commercial speech exception. Contrary to AAKC's contention, the content and context of the email message about Dr. Neuman's departure to its existing patients fits squarely within KPSPA's commercial speech exception. First, AAKC is admittedly in the business of providing or facilitating the provision of healthcare services for which it receives payment. Second, the statement related to the sale or delivery of healthcare services for which AAKC would receive revenue. Third, the statement was directed to AAKC's current patients (or customers) with whom it had an existing business relationship. Finally, the statement was facilitating that ongoing business relationship.

AAKC also argues that its email to existing patients to reschedule appointments cannot be read to solicit future business because those patients already had appointments scheduled. This argument inaccurately represents the sale of healthcare services. While the patients had future appointments, those appointments represent a present intent to obtain future services in exchange for payment—not a completed or guaranteed sale or transaction. AAKC's email explained that it looked "forward to continuing to work with" the patients after rescheduling their appointments with a new AAKC provider. The email demonstrated AAKC's understanding that the scheduled appointments with Dr. Neuman did not represent a completed commercial transaction or sale as well as its intent to maintain those appointments to complete the transaction.

Even accepting as true AAKC's argument that its statement was not selling services but simply rescheduling existing services, the email to patients still "arises out of" the sale of AAKC's medical services to its customers. AAKC's sale, or attempted sale, of medical services to patients gave rise to the email about rescheduling their

20

appointments with different AAKC providers. AAKC's email sought to find the patients scheduled for future appointments with Dr. Neuman a "new pain management doctor *at KC Pain Centers,*" and that clearly "arises out of the sale . . . of . . . services . . . or a commercial transaction in which the intended audience is an actual or potential buyer or customer." K.S.A. 2024 Supp. 60-5320(h)(2). AAKC's email to patients seeking to reschedule their appointments due to Dr. Neuman's departure falls within the KPSPA's commercial speech exception, which means that AAKC is not entitled to strike Dr. Neuman's defamation claim based on those statements.

Having found that AAKC is not entitled to strike Dr. Neuman's defamation claim under the KPSPA for two independently sufficient reasons, it is unnecessary to evaluate the second step of the motion-to-strike analysis and determine whether Dr. Neuman established a likelihood of prevailing on his defamation claim by presenting substantial competent evidence to support a prima facie case.

CONCLUSION

Through the KPSPA, the Legislature seeks to protect people from frivolous litigation that impedes their First Amendment right of free speech, right to petition, and right of association. However, not all speech or conduct is given equal importance under the First Amendment and thus the KPSPA. Here, Dr. Neuman filed a defamation action against AAKC related to its statement about his departure from employment and AAKC's attempt to reschedule future patient appointments from Dr. Neuman to other AAKC providers. AAKC's communication underlying Dr. Neuman's defamation claim is not protected under the KPSPA.

While Dr. Neuman argues that AAKC's description of his departure in that statement harmed his reputation, the content and context of the statement was not connected to a public issue or issue of public interest. Additionally, AAKC's allegedly

21

defamatory statement arose from the sale of goods or services and met the definition of commercial speech excluded from protection under the KPSPA.

The district court did not err in denying AAKC's motion to strike Dr. Neuman's defamation claim under the KPSPA and is accordingly affirmed.

Affirmed.